## LUKE COONEY, JR., v. NEHEMIAH CHASE.

*Malicious prosecution—Probable cause—Advice of counsel—Evidence —Damages.*

1. A respondent was arrested for larceny. By mistake the recorder, who drew the complaint, charged the offense as *larceny*, when from the facts stated to him it should have been larceny as defined under the *embezzlement* statute. The respondent was discharged without an examination, and was re-arrested upon a warrant issued by the same officer for the embezzlement of the same money, and was discharged on his examination. On the trial of a suit for malicious prosecution commenced before the second complaint was made, but tried after the second discharge, the admission in evidence of the complaints and warrants and docket entries of the recorder were objected to for the reasons that the recorder, having been advised of all the facts, drew the first complaint and warrant, and that it was his fault if they were not in proper form, and that the second complaint and warrant and docket entries were made *after* the suit was commenced. And it is held that, the suit being founded upon the first complaint and warrant, they were admissible as a part of the plaintiff's case, and that the second complaint and warrant were admissible as tending to show malice.

2. On the retirement of one partner from the firm and a division of the assets, certain notes taken in *his* name, but belonging to the firm, were transferred to the remaining partners, who sent them to a bank at the home of the makers for collection. The notes were presented for payment when due, when it was discovered that the makers had forwarded the money to the retiring partner, who had no authority to receive it, having no interest in the notes, nor being in any sense the agent of his late partners. The money was sent under a misapprehen-

sion of the facts, the makers supposing that the retiring partner held and owned the notes. He was arrested on the complaint of one of the partners for the larceny of the money, and was discharged on account of defects in the complaint. He thereupon brought suit for malicious prosecution based upon such arrest and discharge, and it is held that the court would not have erred in instructing the jury that there was not probable cause for making such complaint.

3. An instruction, in a suit for malicious prosecution for the arrest of the plaintiff on a criminal charge, that if the defendant acted upon the advice of counsel learned in the law, after placing all of the facts before him, no recovery could be had, is properly qualified by the statement that the jury might take into account the fact whether the defendant paid the counsel anything, or employed him in any way as his counsel, or distinguished him from a magistrate; it appearing that he was a justice of the peace as well as an attorney at law.[1]

4. In a suit for a malicious prosecution for an arrest on a criminal charge, the plaintiff may show that the defendant caused a notice of the arrest to be published in the newspapers, as tending to show the extent of plaintiff's damages and the malice of the defendant.

Error to Kalamazoo. (Buck, J.) Argued May 6 and 7, 1890. Decided June 6, 1890.

Case for malicious prosecution. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Edwards & Stewart* (*Osborn & Mills,* of counsel), for appellant, contended:

1. Under the conceded facts the question of " probable cause " was for the court, and a verdict should have been directed for the defendant: citing *Bulkeley v. Keteltas,* 6 N. Y. 384; *Besson v. Southard,* 10 Id. 236; *Burns v. Erben,* 40 Id. 463; *Heyne v. Blair,* 62 Id. 19; *Thaule v. Krekeler,* 81 Id. 428.

2. In a suit for malicious prosecution the question of probable cause cannot be submitted upon the fact of the guilt or innocence of the accused, but upon the belief of the prosecutor concerning such guilt or innocence, based upon reasonable grounds; citing *Bacon v. Towne,* 4 Cush. 217; *Baldwin v.*

[1] See *Peterson v. Toner,* 80 Mich. 350; *Huntington v. Gault,* 81 Id. 144.

*Weed*, 17 Wend. 224; *Carl v. Ayers*, 53 N. Y. 17; *Fangan v. Knox*, 66 Id. 525, 526.

3. Proof that one takes the advice of counsel learned in the law in regard to instituting a criminal prosecution, places all the facts before such counsel, and acts upon his opinion, makes out a case of probable cause; citing *Stanton v. Hart*, 27 Mich. 539; *Smith v. Austin*, 49 Id. 286; *Wicker v. Hotchkiss*, 62 Ill. 197; *Ames v. Snider*, 69 Id. 376; *Burgett v. Burgett*, 43 Ind. 78; *Walter v. Sample*, 25 Penn. St. 275; Cooley, Torts, 183.

4. The dismissal of the complaint was not the discharge or acquittal of plaintiff upon a hearing or trial on the merits, whereby he stood vindicated, but the dismissal and acquittal were because the complaint was defective and insufficient in legal form. The prosecution must have terminated in the acquittal or discharge of the respondent in a final judgment or order, on a trial or hearing; citing *Marks v. Townsend*, 97 N. Y. 595; *Bacon v. Towne*, 4 Cush. 217; *Boyd v. Cross*, 35 Md. 194; Cooley, Torts, 186.

5. In every action for malicious prosecution or arrest the plaintiff must prove what is averred in the declaration, namely, that the prosecution or arrest was malicious, and without reasonable or probable cause; citing Parke, J., in *Mitchell v. Jenkins*, 5 Barn. & Adol. 588, 594.

*E. M. Irish* (*Irish, Knappen & Frost*, of counsel), for plaintiff, contended for the doctrine stated in the opinion.

LONG, J. Some contention arises between counsel, in their briefs filed in this cause, about the facts appearing from the record, but substantially they are as follows:

Plaintiff and defendant, together with Marshall B. Shaw and George K. Chase, were copartners in the business of manufacturing and selling fanning-mills, under the firm name of Chase, Shaw & Co., at Kalamazoo, from some time in 1885, and continuing up to February 12, 1886. During plaintiff's connection with the firm, he traveled as salesman in Michigan and other states, and took numerous notes on sale of mills, which in form were payable to Luke Cooney, Jr., or bearer, but were the property of Chase, Shaw & Co. On February 12, 1886, the plaintiff

retired from the firm, and a division of property and notes was made; the plaintiff at that time executing the following receipt:

"KALAMAZOO, Feby. 12, 1886.
"Received from Chase, Shaw & Co. notes valued at $4,225 as the interest in the firm up to date, also property valued at $424.                    LUKE COONEY, Jr."

At the time of this settlement the other members of the firm took the balance of the notes as their share of the firm assets, among which were two of $37 each, given by parties in Pennsylvania, and falling due January 1, 1887. It appears that on this settlement the plaintiff presented a bill incurred by him at Owego, N. Y., for boarding horses and men in the business of the firm. The bill was not paid, but plaintiff, desiring it settled, estimated it at $100, and on the settlement gave a receipt as follows:

"KALAMAZOO, Feby. 12, 1886.
"Received from Chase, Shaw & Co. one hundred dollars as payment in full for horse bill at Owego.
"L. COONEY, Jr."

The plaintiff claims that all parties agreed at this time, if the bill when ascertained was in excess of $100, such excess should be paid proportionately between them, and that he afterwards paid the bill, amounting to $154.50. The firm of Chase, Shaw & Co. took the two promissory notes above mentioned, and forwarded them to the Pottsville Bank, Penn., for collection when due. Upon presentation to the makers by the bank, it was learned that the makers, in December, 1886, sent the money by express to the plaintiff. It is claimed on the part of the defendant that Chase, Shaw & Co., to whom these notes belonged by virtue of such settlement, had no knowledge, and were not informed, of the sending of the money by the makers to Cooney until in February or March, 1887; that when they learned the fact they interviewed Cooney,

and charged him with having received the money, which he admitted. Cooney claims that as soon as possible he informed them that he had received the money, and, as they owed him on account, he would retain it, and balance accounts. This they deny. Cooney, however, claims that, having paid $54.50 on the horse bill at Owego more than he was allowed in the settlement, and of which the others agreed to stand their proportionate share, he had a right to be re-imbursed. He also claims that the money received from the Pennsylvania parties never belonged to Chase, Shaw & Co.; and they claim that they never agreed to pay anything further on the horse bill, and that the receipt was a settlement in full of that bill.

Upon the refusal of Cooney to pay over this money, Chase, the defendant in this suit, made a complaint before the recorder of the city of Kalamazoo against Cooney for larceny of the money. This complaint was found defective; and on February 3, 1888, Cooney, having been brought into court under warrant, was discharged, and the warrant returned. On February 9, 1888, the plaintiff commenced the present action for malicious prosecution. On February 11, two days thereafter, the defendant made another complaint for embezzlement and larceny against Cooney before the recorder. Warrant was issued, and Cooney arrested thereon, and taken before the recorder. This examination was adjourned from time to time until July 28, 1888, when Cooney, after a full examination, was discharged. On the trial of the present case for such malicious prosecution, the plaintiff had verdict and judgment for $1,000. Defendant brings error. Thirty-five errors are assigned.

Defendant's counsel objected to the admission in evidence of the complaint and warrant and the recorder's docket in the case of *People v. Cooney*. It is claimed that the first complaint and warrant, and the docket entry of

the recorder, were not admissible, for the reason that the recorder, having been advised of all the facts, drew the complaint and warrant, and that it was his fault or negligence that they were not in proper form; that the second complaint and warrant and docket entries were not admissible, because they were made after the present suit was commenced. There was no error in admitting them in evidence. The present suit was founded upon the complaint and warrant first made, and they were properly a part of the plaintiff's case. The second complaint and warrant were admissible as tending to show malice.

The court instructed the jury upon this first complaint that the defendant could not be held liable in the case for any mistake in the form of the complaint made by the recorder in drafting it; that, if the defendant had reasonable cause to believe the plaintiff guilty of the crime of embezzlement, and stated the facts of his belief to the recorder, and the recorder, instead of setting forth the facts in legal form, drafted the complaint, alleging simple larceny, which complaint could not be maintained because of a defect in the form of statement, the defendant could not be held responsible for such defect. The jury were also directed, as to the effect of such discharge upon the first complaint, that,—

"If the discharge of the plaintiff from the first complaint was because the recorder, from the facts stated to him when the complaint was taken, afterwards concluded that there was no probable cause to suspect that plaintiff had been guilty of any offense, then you may consider this fact, with the other facts in the case, in determining whether there was or was not probable cause for the prosecution; but, if you find that plaintiff was discharged from the first complaint because of the opinion of the recorder or prosecuting attorney that the complaint did not set forth the offense with legal accuracy, and could not be maintained for that reason, and that alone, then the discharge by the recorder does not in any way tend to prove either that there was or was not probable cause."

This certainly was putting the defendant's case to the jury in as favorable light as he was entitled to. This becomes more apparent when we consider the circumstances under which the complaint was made, and the facts upon which the defendant claims to have acted. These two notes were taken by Chase, Shaw & Co. as a part of their share of the firm assets. Before they fell due, they sent them to the bank at Pottsville for collection. They became due January 1, 1887, and thereafter the bank presented them to the makers, and demanded payment. It was then learned by the bank that the makers had sent the money in December previous to Cooney. Chase, Shaw & Co. learned of this fact in February or March following. They then sought to trace the money into Cooney's hands, and recover it from him, instead of looking to the makers for payment. There is no claim or pretense that Cooney had authority to receive the money on the notes. He had parted with his title long before this, and had no claim upon or interest in them. He was in no sense the agent of Chase, Shaw & Co. to collect them, or receive the money upon them. The money was sent to Cooney by the makers under a misapprehension of the facts, they supposing he still held and owned them. Chase, Shaw & Co. had no claim upon Cooney for this money, and could not have maintained any action against him for it. Under these circumstances, the court would not have been in error if he had instructed the jury that there was not probable cause for making the complaint.

It is claimed by the defendant that he acted under the advice of counsel in making the complaint. The jury, however, were given full and fair instructions upon this branch of the case, and were told by the court, if the defendant acted upon the advice of counsel learned in

the law, after placing all the facts before such counsel, no recovery for malicious prosecution could be had; the court stating, however, that the jury might take into account the fact whether the defendant paid the counsel anything, or employed him in any way as his counsel, or distinguished him from a magistrate. There is no error in this qualification.

It appears that, after defendant failed to procure the money from Cooney, he and Shaw went to Mr. W. W. Peck, an attorney at law and justice of the peace of Kalamazoo, and laid the matter before him. Mr. Peck had done business for Chase, Shaw & Co. for many years. They presented to him an hypothetical case. Upon a statement of the facts, he told them he thought it was a case of embezzlement, but that he had no jurisdiction to hear it; that it was a matter to go before the recorder, and that they better see the prosecuting attorney. Instead of doing so, the defendant went to the recorder, made the complaint, and procured the issuing of the warrant. Before the second warrant was issued the matter was brought to the attention of the prosecuting attorney, who advised Chase that he did not think the facts sufficient to make out a case of embezzlement; and yet the defendant employed other counsel to draft the complaint, which he swore to, and upon which the second warrant was issued. The jury were also told that the defendant could not rely upon the opinion of the magistrate, or recorder, who issued the warrant. There was no error in this.

Counsel contend that there was no evidence in the case to warrant the charge upon the question of the complaint being made to collect a debt of the plaintiff. The circumstances under which the complaint was made, and the character of the transactions between the parties in relation to the notes, and the effort to procure the

money coming into the hands of Cooney, are sufficient evidence to warrant that theory.

Exception is taken to the refusal of the court to give certain requests to charge. The requests were all covered by the general charge,—some with modifications which were proper, and others changed by addition to them in many respects; but they were all substantially given, when proper to be given as applicable to the case.

On the question of malice, which was covered by the defendant's seventh request,—which, it is asserted, was not given,—the court very plainly told the jury that, unless there was malice on the part of the defendant, no recovery could be had; that, while they could not infer want of probable cause from any degree of malice, yet, if the proof warranted it, they could infer malice from want of probable cause. That is, if defendant did not have probable cause to make the complaint, if the evidence warranted it, then malice might be inferred; but, if no malice was shown, then the action must fail. Certainly the defendant could not complain of this. The rule is well settled that malice may be inferred from want of probable cause, but the court added a still further element, before malice could be inferred; that is, if the evidence warranted it, and there was want of probable cause, then malice might be inferred.

Many errors are assigned upon the rulings of the court in admitting and refusing to admit certain testimony that make it necessary to state some of the circumstances leading up to the making of the two complaints, and matters transpiring after the arrest, by which the plaintiff claimed to have been damaged, not only in his reputation, but also in his business affairs. It appears that, after Chase and Shaw learned that Mr.

Cooney had the money on the two notes, they went to
Mr. Peck, the justice before referred to, and consulted
him about the matter, and told him that Cooney had
collected money belonging to them, and refused to pay
it over.  Some talk was then had about arresting Cooney,
but Mr. Shaw concluded to see Cooney, and, if possible,
get the money.  A meeting was had with Cooney, and
he refused to pay it over unless they would fix up the mat-
ter of the account.  Mr. Chase then told him he would
make him trouble.  Mr. Cooney says Chase told him, if he
did not settle it up, he would have him "in the tin top,"
meaning the jail.  Mr. Chase denies this, but admits that
he told him they would make him trouble.  After the
warrant was issued, it was put into the hands of the
sheriff, who was advised by the defendant to look after
Mr. Cooney, as he might leave the city.  While the
sheriff did not take the plaintiff into actual custody on
the warrant, yet he advised him he must not leave the
city.  He was kept and detained for several days under
the first warrant, and finally discharged.  Under the
second arrest, he was also held, and required to appear
at the court on several occasions, though no bail was
required.

Plaintiff claims that he made an effort to keep the
matter of his arrest out of the public press, but that
Chase and Shaw caused it to be published, and the
affair was noticed in several newspapers.  Chase admits
that he took an article to one of the newspapers in Kal-
amazoo, for publication, stating the arrest of Cooney.
It was claimed on the trial by plaintiff, and testimony
introduced tending to show the fact, that the plaintiff
had sustained great damage to his business by reason of
the arrest, and the publicity given to it by the defend-
ant.  The 10th, 11th, 12th, and 13th assignments of

error relate to the question of the admissibility of this evidence as an element of damage. This evidence was properly admitted. It would be a strange rule that would permit one to maliciously cause the arrest of another without any probable cause, to give publicity to the arrest to an extent that his business friends and acquaintances desert him, and withdraw their support and trade, and then deny relief or satisfaction for such wrongs. The plaintiff was entitled to put this element of damages before the jury, and the court was not in error in receiving the testimony. This element of damage has been repeatedly recognized by this Court. *Allison v. Chandler*, 11 Mich. 554; *Gilbert v. Kennedy*, 22 Id. 117. The court was not in error in permitting the plaintiff to show the publicity given to the arrest, and the part Chase took in giving the facts to the press. It was not only competent as one of the facts tending to show the extent of the plaintiff's damages, but as tending strongly to show malice.

Many other errors are assigned, but we do not consider them of sufficient importance to notice. The record contains nearly 250 pages of printed matter, which we have carefully examined. The defendant was given every opportunity for a full cross-examination of the plaintiff upon all the questions raised. The cause seems to have been very fully tried in the court below by able counsel, and has been ably argued here. We are unable, however, to find any error in the record of which the defendant can complain. At the outset of the trial, it appeared that the arrest of the plaintiff for either larceny or embezzlement was wholly unwarranted. When defendant followed it up by making a second complaint, and giving notoriety to the arrest by himself carrying the article to the newspaper for publication, the jury had a right to

say that the arrest was not only without cause, but was malicious, and intended to injure the plaintiff.

The judgment must be affirmed, with costs.

The other Justices concurred.