## CHICAGO, R. I. & P. RY. CO. v. HOLLIDAY.

No. 1157.   Opinion Filed November 14, 1911.

Rehearing Denied January 9, 1912.

(120 Pac. 927.)

1. **MALICIOUS PROSECUTION—Cause of Action—Elements.** A petition, in order to state a cause of action for malicious prosecution, must charge: First. That a prosecution was commenced against plaintiff. Second. That is was instituted or instigated by defendant. Third. That it was malicious. Fourth. That it has been legally and finally terminated in plaintiff's favor. Fifth. That it was without probable cause. For petition examined, and **held** to be sufficient, see opinion.

2. **SAME—Actions—Defenses.** It is no defense, in an action for malicious prosecution for a wrongful search of a dwelling house, that the affidavit of the party by whom the search warrant was secured did not, in law, authorize its issuance.

3. **SAME—Corporations—Liabilities—Torts—Acts of Agent.** A private corporation, like an individual, is liable for the acts of its agent in instituting a malicious prosecution, if the same were done while acting within the scope of his authority.

4. **SAME—Malice—Want of Probable Cause.** Malice may be inferred from want of probable cause. It is an inference which the jury may or may not draw from the want of probable cause.

5. **SAME—Persons Liable—Acts of Agent.** In a case where a station agent for a railway company, having the care, custody, and supervision of the property of his master at the station where he is located, in furtherance of his master's business, while in pursuit of property stolen from his master, while in possession of such agent, and with a specific intent of recovering such stolen property back for his master, procures the issuance and service of a search warrant, by which the dwelling house of an innocent person is wrongfully searched, and the issuance of such search warrant having been without probable cause, and with malice, **held**, that the agent was acting within the scope of his authority, and the master will be held liable in damages for such wrongful search, notwithstanding the master did not directly authorize or afterwards ratify the procurement of such search warrant.

(Syllabus by Robertson, C.)

*Error from District Court, Le Flore County; Malcolm E. Rosser, Judge.*

Action by James E. Holliday against the Chicago, Rock Island & Pacific Railway Company for damages from an unreasonable search, instituted maliciously and without probable cause by the defendant. Judgment for plaintiff, and defendant brings error. Affirmed.

C. O. Blake, H. B. Low, R. J. Roberts, and Day & Du Bois, for plaintiff in error.

White & Hale, for defendant in error.

Opinion by ROBERTSON, C. This case presents error from the district court of Le Flore county. On February 22, 1909, the defendant in error, James E. Holliday, who was plaintiff below, and who will hereafter be designated as plaintiff, commenced an action in the district court of Le Flore county against the Chicago, Rock Island & Pacific Railway Company, defendant, and hereinafter designated as such. The petition, omitting the caption, is in words and figures as follows:

"Comes now James E. Holliday, the plaintiff herein, and for cause of action against defendant, Chicago, Rock Island & Pacific Railway Company, alleges and states: First. That plaintiff is a resident of Howe, Le Flore county, state of Oklahoma, and that defendant is a foreign corporation, operating lines of railroads through and across Le Flore county, Okla., and having therein an office for the transaction of business, and an agent of the aforesaid company. Second. That said plaintiff, James E. Holliday, is a true and honest citizen of said state and county, and as such has always behaved and conducted himself, and has never been guilty, or until the committing of the grievances by the said Chicago, Rock Island & Pacific Railway Company, hereinafter mentioned, been suspected to have been guilty, of felony, or of any other crime; and that before the committing of the several grievances by the said Chicago, Rock Island & Pacific Railway Company, as hereinafter mentioned, the said plaintiff had deservedly obtained and acquired the good opinion and credit of all his neighbors; yet the said Chicago, Rock Island & Pacific Railway Company, acting by and through its officers and agents, and more particularly through one J. M. Grimes, well knowing the premises, but contriving and maliciously intending to injure said plaintiff in his good name, fame, and credit, and to bring him into public scandal, infamy, and disgrace, and to impoverish,

oppress, and ruin him, heretofore, to wit, on the ——— day of January, 1909, without any probable cause whatever, charged him, the said James E. Holliday, before J. M. Rooney, justice of the peace within and for Howe township, said county and state, with feloniously stealing certain meat belonging to said defendant, and with having said stolen articles concealed in the house where said plaintiff dwelt; and that said defendant, Chicago, Rock Island & Pacific Railway Company, acting by and through its officers and agents, maliciously and without probable cause, procured said justice to grant a warrant to search the house of plaintiff. Third. That said justice issued said warrant accordingly, and that during the absence of plaintiff herein, and in the presence of plaintiff's wife and small children, plaintiff's house was searched by one George Barlow, constable of said township, assisted by one ———. Fourth. That after said diligent search had been made, and none of the goods searched for found, said George Barlow, constable, as aforesaid, departed from plaintiff's premises, and since that time neither defendant, Chicago, Rock Island & Pacific Railway Company, nor any other person has further prosecuted plaintiff, and has abandoned said prosecution, and in no wise made reparation for injury done plaintiff. Fifth. That by means of the premises plaintiff has been injured and damaged in the sum of $1,999. Wherefore, the premises considered, the plaintiff prays that he have judgment against said defendant, Chicago, Rock Island & Pacific Railway Company, for said sum of $1,999, and his reasonable costs herein laid out and expended."

The defendant answered as follows:

"(1) Defendant denies each and every material allegation in said petition contained. (2) Defendant, further answering, alleges that the said J. M. Grimes had no authority to represent the defendant in matters and things in plaintiff's' petition alleged to have been done by him, and that said defendant is in no way responsible therefor. (3) Defendant further alleges that neither it, nor any person authorized to represent it in that behalf, caused the process mentioned in plaintiff's petition to be issued or served. Wherefore defendant prays judgment."

Upon the issues thus joined, trial was had, which resulted in a verdict in favor of plaintiff in the sum of $1,494.50. Motion for new trial was filed, argued, and overruled, and judgment was entered for plaintiff in the sum found by the jury, and the defendant brings this appeal to reverse said judgment, and re-

lies upon five assignments of error, which, in their order, are as follows:

"First. The petition did not state facts sufficient to constitute a cause of action. Second. The court erred in admitting the search warrant in evidence. Third. The petition did not charge facts sufficient to entitle plaintiff to prevail in an action for malicious prosecution. Fourth. The court erred in overruling defendant's motion to direct a verdict in its favor. Fifth. The court erred in overruling defendant's motion for new trial."

Inasmuch as the first and third assignments embrace practically the same propositions, they will be treated together. The first question presented in the combined first and third assignments of error challenges the sufficiency of the petition. Was the petition sufficient to charge malicious prosecution? In order to properly state a cause of action for malicious prosecution, the petition must allege, first, that a prosecution was commenced against the plaintiff; second, that it was instituted or instigated by defendant; third, that it was malicious; fourth, that it has been legally and finally terminated in plaintiff's favor; fifth, that it was without probable cause. *Schieber v. Clapp et al.,* 13 Okla. 215, 74 Pac. 316; *Jones v. Finch,* 84 Va. 204; Newell on Malicious Prosecution, page 297. A careful examination of the petition shows that it contains, clearly and succinctly, each and every allegation required by the rule as above laid down by our own Supreme Court, and is therefore amply sufficient as against the objections urged by the plaintiff in error, and no error was committed by the court in refusing to sustain defendant's motions.

The next assignment urged is this: "The court erred in admitting the search warrant in evidence." The only question made by the defendant to the introduction of the search warrant at the trial was:

"The defendant objects to the introduction of the search warrant, for the reason that there was no legal affidavit filed upon which to base the search warrant." (Record, page 6.)

We do not understand that such an objection can be made in a case like this.

In Am. Enc. Law (2d Ed.) vol. 25, p. 150, it is said:

"It is no defense to such action that the affidavit of the party by whom it was secured did not, in law, authorize the issuance of the warrant."

"A person who maliciously and without probable cause prosecutes another upon a criminal charge cannot avoid his liability by showing that the indictment or information was insufficient or defective, either in substance or form, as that the complaint upon which the plaintiff was ·arrested did not, in law, charge a criminal offense." (*Shaul v. Brown,* 28 Iowa, 37, 4 Am. Rep. 151.)

"In an action on the case for malicious suing out an attachment against the plaintiff, the defendant cannot raise the objection that the affidavit, which he made to procure the attachment, and on which the writ issued, was insufficient to authorize the issuance of an attachment." (*Forrest v. Collier,* 20 Ala. 175, 56 Am. Dec. 190.)

"Procuring a search warrant to be issued may· be made the foundation of an action for malicious prosecution, notwithstanding the affidavit on which such search warrant was issued does not charge a crime." (*Harlan v. Jones,* 16 Ind. App. 398, 45 N. E. 481.)

And in *Cooney v. Chase,* 81 Mich. 203, 45 N. W. 833, it was held that the complaint and warrant were admissible, though irregular in form.

The great weight of authority is to the effect that the defendant, in an action for malicious prosecution for a wrongful search of a dwelling house, will not be permitted to show at the trial that the affidavit or complaint upon which the search warrant issued was defective or insufficient. See, in support of this principle, in addition to the foregoing: *Stancliff v. Palmeter,* 18 Ind. 321; *McCullough v. Rice,* 59 Ind. 580; *Schattgen v. Holnback,* 149 Ill. 646, 36 N. E. 969; *Matlick v. Crump,* 62 Mo. App. 21; *Dennis v. Ryan,* 65 N. Y. 385, 22 Am. Rep. 635; *Collins v. Love,* 7 Blackf. (Ind.) 416. In the case at bar, no objection to the form or sufficiency of the search warrant was made, and the court did not err in permitting it to be introduced in evidence.

The introduction of the search warrant shows, as plaintiff had a right to show, that defendant charged that a burglary had

been committed from a car in which certain goods and merchandise, in custody of the defendant, had been taken, and that the officer to whom it was directed was commanded to search plaintiff's house, and to arrest plaintiff if the goods were found in his possession, and the return of the officer on the back of the warrant showed the time and manner of its execution, together with the result of the search, and the warrant and return thereon were properly identified by the officer who served the same.

By the introduction of the search warrant, the genuineness of which was not in any way disputed, the fact that a search of plaintiff's house had been made by the officer, the authority upon which the search was made, together with the result of the search, were made clear.   What better way of proving these matters did plaintiff have, and how was defendant prejudiced thereby?   The admission of the search warrant in evidence tended merely to establish certain facts alleged in the petition.   If this had been the only evidence offered by plaintiff in support of those allegations, objection might well have been made, and; no doubt, the ruling of the court would have been different.   It was competent evidence, and went to the jury for what it was worth, together with all the other facts and circumstances appearing in evidence at the trial, and under proper instructions by the court.   The jury gave it such weight and credit as it was entitled to, and no error was committed by the court in permitting it to be identified and introduced.

"To show the institution of a proceeding complained of, the original record, or a duly certified copy thereof, is admissible, and is in fact the only competent evidence of the fact, unless a foundation is laid for secondary evidence.   For this purpose, and also to show defendant's connection with the prosecution, the affidavit or complaint on which the warrant is issued, or the warrant itself, is frequently produced."    (19 Am. & Eng. Enc. Law [2d Ed.] 694.)

"In an action for malicious prosecution against the prosecutor, or the justice before whom proceedings were instituted, the affidavit and warrant issued thereon are competent evidence." (*Cooper v. Turrentine,* 17 Ala. 13.)

"In an action for maliciously prosecuting the plaintiff for a criminal offense, the affidavit on which the warrant for the arrest

was issued is admissible in evidence for the plaintiff, if it authorized the warrant." (*Turpin v. Remy,* 3 Blackf. [Ind.] 210.)

"A. charged B. before a justice with having committed perjury on a trial between them in a justice's court, upon which charge a warrant was issued against B., and he was thereon arrested. For this arrest, B. brought an action for malicious prosecution against A. *Held,* that the original affidavit and warrant were admissible evidence for plaintiff." (*Conduit v. Dicken,* 3 Blackf. [Ind.] 216.)

"In a suit for malicious prosecution, the petition alleged arrest of plaintiff under process issued upon affidavit and complaint of defendant, charging plaintiff with knowingly cutting and carrying away timber from land not his. Upon the trial, the affidavit was introduced, and, under objection, the *capias* and bond in the case, in which plaintiff was charged with theft. *Held,* that it was no variance, as affecting the liability of the party making complaint, that the proceeding may not have been strictly regular." (*Cooper v. Langway,* 76 Tex. 121.)

Nor do we agree with counsel for defendant that the introduction of the search warrant was for the sole purpose of proving the result of the criminal proceedings against plaintiff. The rule announced in *Sweeney v. Perney,* 40 Kan. 102, 19 Pac. 328, also in *Casey v. Sevatson,* 30 Minn. 516, 16 N. W. 407, correctly states the law, but in both cases cited the judgment of acquittal was urged and relied upon by the plaintiff as a final adjudication of the controversy in favor of the plaintiff, and against the defendant. No such contention is made in this case, but the question of the determination of the prosecution was submitted to the jury, with other questions; and, while the evidence thereon is not as strong and satisfactory as it might have been, yet the jury was satisfied, and, no objections to the instructions of the court in thus submitting it having been made, we are not disposed to disturb the finding of the jury on the subject, nor to criticise the action of the court in admitting the search warrant in evidence.

The fourth assignment of error, to our mind, presents the only real question in this case, viz., Did the court err in overruling the defendant's motion to direct a verdict in its favor?

Defendant insists that the refusal to direct a verdict was error, because:

"(1) ·That no such agency was shown to exist between the defendant and witness J. M. Grimes as to fix liability upon the defendant for his actions. (2) That it was not shown that there was a want of probable cause. (3) That the existence of malice was not established by the evidence."

Let us examine these grounds in their order. The testimony of the agent Grimes, which is all the testimony in the record bearing on the question of agency, is as follows:

"Direct Examination. By Mr. White: Q. State your name. A. J. M. Grimes. Q. Where do you live? A. I live at Howe. Q. What is your business? A. Well, I am agent of the C., R. I. & P. Railroad Company. Q. Agent for the Chicago, Rock Island Railway Company? A. Yes, sir. Q. You were agent of the Rock Island Railroad Company during the month of January of this year, Mr. Grimes? A. Yes, sir. Q. Is that your signature? (Handing witness original information. Witness examines affidavit.) A. Yes, sir. Q. As agent for the C., R. I. & P. Railway Company, what are your duties? A. Well, I have various duties. I don't know as I could tell you all the duties I do have. Q. The station is in your charge, is it? A. Yes, sir. Q. The goods of the company are transferred under your charge, and under your protection? A. Yes, sir. Q. The goods in transit in the freight yards are under your care and supervision? A. Yes, sir. Q. In what capacity for yourself, or for the C., R. I. & P. Railway Company, did you make that affidavit? (Defendant objects. There is no proof that he was authorized to make that affidavit by his employers, or that it came in the scope of his authority.) By the Court: You might as well settle that now. By Mr. White: Q. Whose goods were you attempting to recover on the 26th day of January? (Objected to as incompetent, irrelevant, and immaterial.) By the Court: I will let him answer the question. (Objection overruled. Defendant excepts.) A. The goods belonged to Dawson and Echols, of Little Rock. Q. In whose care and custody were these goods at the time they were stolen? A. They were in mine, I suppose, as agent of the C., R. I. & P. Railway Company. Q. They were goods in transit, being shipped by the C., R. I. & P. Railway Company? A. Yes, sir. Q. Now, then, for whom were you attempting to recover the goods that had been stolen? A. Well, do you want me to state the case? Q. I want you to state, in other words, were the goods for your own personal use, or to be returned to the Rock Island Railroad Company? A. To to be returned to the C., R. I. & P. R. R. Co. Q. I want to ask him now for whom he signed the original affidavit? It is signed by him as agent of the C., R. I. & P. Railway Com-

pany. (Defendant objects to that as incompetent, irrelevant, and immaterial, for the reason it is not proof to show what his authority was.) By Mr. White: We can also show that he was at that time engaged, as he thought, in the service of the company. Now, we have shown that in his official capacity as agent of the C., R. I. & P. Railway Company he has the property charged to have been stolen in his possession as agent; that he has charge of that property, and it is his duty to protect that property. By the defendant: He is not charged with that. By the Court: He is agent of the company, and if he hasn't testified to it already he possibly would. By Mr. Day: Q. Do you say you had the meat at the station? A. In a car out in the yard. By the Court: Q. Was that car registered when it passed through your station? Did you register it, or take any list of it, or anything of the kind? A. Yes, sir. Q. You did that? A. Yes, sir. By the Court: I think I will let you ask the question. (Defendant excepts.) By Mr. White: Q. By whom and in what capacity did you sign that affidavit. A. Well, I signed it in the capacity as agent, but I had no authority from my superior officers to do it. I signed it as agent of the company. I had no authority for that. Q. You had no written authority to do it. A. No, sir. I had no written authority. Q. But, if I understand your statement, you did that as agent of the C., R. I. & P. Railway Company? A. Yes, sir. Q. And not for yourself? A. No, sir; not for myself."

"Cross-examination. By Mr. Day: Q. You say you had no authority whatever from your superior officers to make that affidavit to search for that meat? A. No, sir. Q. Did you have any other kind of authority, written or otherwise? A. No, sir; I didn't have any written authority, or any kind, only what I found. Q. What was that? A. The salt I found. Q. You didn't understand my question, Mr. Grimes. Did you have any authority of any kind? You said you had no written authority from your superior officers. Did you have any authority of any kind to institute searches for the company? A. No, sir. Q. Did that come within the scope of your authority? A. No, sir; I don't think it did. We have circulars from the company with information of that kind. Q. Does not come within the scope of your authority? A. No; legal matters do not. Q. Then I understand you say you had no authority to institute searches, make complaints against the railroad company? A. I didn't have any in that case. Q. Have you in any case, unless the authority comes special? A. I don't think I would on an occasion like that. Q. And you were given no authority to do that? A. No, sir; I wasn't given any authority."

This evidence, if it proves anything, shows that Grimes was the agent of the defendant at Howe; that as such agent the goods of the defendant, transferred and in transit, were in his care, custody, and supervision; that he was engaged, at the time the search warrant was issued, in the service of the defendant; that the goods had been stolen from the company, and said goods, at the time they were stolen, were in his care, custody, and supervision, and at the time he caused the search warrant to be issued he was trying to locate and recover back for the defendant company, not for himself personally, the goods, which it was his duty, as such agent, to care for and protect. These salient points are nowhere in the record denied; in fact, they stand admitted. Now, was he acting within the scope of his duties when he signed the affidavit as the agent of the defendant company?

We are not unmindful of the difficulties to be encountered in the solution of this question. There is an amazing lack of uniformity in the decisions of courts on this question, yet, after a critical examination of the cases, we are inclined to the view presented by counsel for defendant in error that there is in all the reported cases "a marked distinction, in the liability of the master for the act of his servant, between those cases wherein the result of the act of the servant was to inflict punishment upon the offender, or to vindicate justice, and those cases wherein the servant was attempting to protect the master's property, which was under his care and supervision, or to recover this property back after it had been taken." (Defendant's brief, page 8.)

"The later decisions, however, incline to the rule making the principal liable for acts of the agent, done within the scope of his employment, though they be wanton or malicious." (1 Am. & Eng. Enc. Law [2d Ed.] 1156, and the many cases there cited.)

Also:

"It seems to be the better doctrine that, where a prosecution, which is maliciously instituted by an agent of a corporation, is in the line of his duty, for the purpose of benefit to his principal, and not for any object personal to himself, the corporation will be held responsible." (1 Am. & Eng. Enc. Law [2d Ed.] 1157.)

It has been held in Missouri that, where an express agent,

charged with the duty of protecting property and collecting charges thereon, attempts to collect charges on property unlawfully taken without payment of the charges, and in such attempt, as agent, mistakenly institutes a criminal prosecution without probable cause, the principal will be liable in an action for malicious prosecution, though, where the agent acts as a citizen, and for the purpose of vindicating justice, the rule is otherwise. *Cameron v. Pac. Ex. Co.,* 48 Mo. App. 99 ; *Gillett v. Mo. Valley R. R. Co.,* 55 Mo. 315, 17 Am. Rep. 653.

"A private corporation, like an individual, is liable for the acts of its agents in instituting a malicious prosecution authorized and ratified by the corporation, or within the scope of authority covered." (*Farmers' Mut. Life Ins. Co. v. Stewart,* 167 Ind. 544, 79 N. E. 490 ; Cooley on Torts, pp. 200-205 ; 10 Cyc. 1203, 1208, 1211, 1217 ; 19 A. & E. Enc. Law [2d Ed.] 691, 692 ; *Penn, etc., v. Weddle,* 100 Ind. 138 ; *Am. Ex. Co. v. Patterson,* 73 Ind. 430 ; *Markley v. Snow,* 207 Pa. 447, 56 Atl. 999, 64 L. R. A. 685 ; *Carter v. Howe Mach. Co.,* 51 Md. 290, 34 Am. Rep. 311.)

There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony or recovering it back, and an act done for the purpose of punishing the offender for that which has already been done. Clark & Syles, Agency, vol. 1, p. 1087.

In *Phoebe A. Staples v. John M. Schmidt,* 18 R. I. 224, 26 Atl. 193, 19 L. R. A. 824, the Supreme Court of the state of Rhode Island, in discussing this subject, says:

"It remains to apply these principles to the case at bar. The servant in this case was left with an assistant in charge of his master's store. His ordinary duties were undoubtedly to show goods, and to sell them to customers. It was, however, equally his duty to protect his master's property from pilfering. The acts complained of were evidently done with that intention. The arrest was for the purpose of searching for and recovering the master's property, not with the object of punishing crime against the public. The establishment was not a railroad station, where the multiplicity of employees confines each one to a narrow round of duties, where special officers are stationed to preserve order and detain criminals ; nor a large dry goods emporium, where detectives and watchmen are employed to guard against thieves. The servant here was a salesman and custodian in one. Whatever

the master might do in the protection of his property, he expected his servant to do in his absence. If the servant had seen the plaintiff take up and secrete the package of spoons in question, and had allowed her to walk away with them unmolested, could any one say that he had not been derelict in his duty to his master? If, in performance of his duty, he mistook the occasion for it, or exceeded his powers, or employed an improper degree of compulsion; the mistake and the excess must be answered for by the master."

And, following the rule as announced in the Supreme Court of Minnesota, in *Smith v. Munch et al.,* 65 Minn. 256, 68 N. W. 19, says:

"While there is much conflict in the decisions as to when a master is liable for the intentional torts of his servant, yet the tendency of the modern authorities is to extend the liability of the master in such cases; and the general rule may now be said to be that a master is responsible for the torts of his servant done with a view to the furtherance of the master's business, whether the same be done negligently or wilfully, but within the scope of his agency. The fact that the servant, in committing the tort, may have been exceeding his actual authority or even disobeyed his express instructions, does not alter the rule. We think that the facts of the present case bring it within this case."

The Supreme Court of North Carolina, in *Jackson v. American Telegraph & Tel. Co.,* 139 N. C. 347, 51 S. E. 1015, 70 L. R. A. 738, says:

"In this case the jury has found that the defendant, by its servant, caused the plaintiff to be unlawfully arrested, for the purpose of putting him out of the way, so that its agents and servants might erect telephone and telegraph poles on his land. If this is not an act done in the course of the employment, and in the furtherance of the master's business, for his benefit and advantage, it would be hard to conceive of one which would come under that class."

And a case very much in point is *Wheeler & Wilson Mfg. Co. et al. v. Boyce,* reported in 36 Kan. 350, 13 Pac. 609, 59 Am. Rep. 571, wherein the rule in this class of cases is stated as follows:

"To make the corporation responsible, it is not necessary, as plaintiffs in error contend, that the principal should have directly authorized the particular wrongful act of the agent, or

should have subsequently ratified it. Judge Story, in treating of the liability of principals for the acts of their agents, says 'that the principal is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances or misfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize, or justify, or participate in, or, indeed, know of, such misconduct, or even if he forbade or disapproved of them,' and to sustain this case he cites numerous authorities. 'In all cases,' he says, 'the rule applies, *respondeat superior,* and it is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings, whether directly with the principal, or indirectly with him through the instrumentality of agents.' Story, Ag. 452."

See, also, *Moore v. A., T. & S. F. Ry. Co.,* 26 Okla. 682, 110 Pac. 1059.

The third ground of the motion to direct a verdict is: "That the existence of malice was not established by the evidence." Malice may be inferred from want of probable cause. It is an inference which the jury may or may not draw from the want of probable cause. To be sure, there was no express malice shown, but plaintiff was not required to prove express malice, in the ordinary significance of the term. To prove malice, sufficient to warrant a verdict, the ill will, hatred, or resentment of defendant toward plaintiff may be inferred by the jury from want of probable cause, or other good reason. The question was fairly submitted to the jury under proper instructions by the court. By the verdict, the jury found that there was malice in the bringing of the criminal prosecution, and it is not for us to say that they were mistaken.

The fifth assignment of error raised by defendant in its brief, "that the court erred in overruling defendant's motion for a new trial," is, in our opinion, untenable; the only serious contention of counsel seeming to be that the finding of the jury was made under the influence of passion and prejudice. This we do not think is the case. Plaintiff, as shown by the testimony, was an honest, lawabiding citizen; he had never been charged or accused of a crime before this; he was by this proceeding subjected

to great humiliation and disgrace, and his house was put into great disorder and confusion by the unwarranted search; suspicion among his friends and neighbors was necessarily cast upon him by the wrongful acts of defendant; the privacy of his home was interfered with, and his family made to endure the shame and disgrace which always attend such acts. The damages assessed doubtless exceeded the injury done to the goods; but the jury, as it has a right to do, assessed the damages with reference to the feeling of plaintiff and the disturbance of his family. Plaintiff made out at least a *prima facie* case, and the questions were submitted to the jury under proper instructions by the court, and no objections were made in defendant's brief to the same, and it is presumed, therefore, that they were satisfactory to it.

After a careful investigation of the whole record, we fail to find error which would warrant a reversal, and the judgment of the district court of Le Flore county should therefore be affirmed.

By the Court: It is so ordered.

All the Justices concur.