## MAYER et al. v. GOODMAN.

No. 12380—Opinion Filed Nov. 27, 1923.

**1. Malicious Prosecution—Defenses—Probable Cause—Consulting Attorney.**

In an action for malicious prosecution, the defendants interposed as a defense that they first consulted with a justice of the peace, who issued the warrant, who was also an attorney, and that they acted in what they did upon his advice. Held, that where a complainant consults an attorney at law and makes a full, fair, and truthful statement of the facts and solicits a deliberate opinion thereon, and the advice obtained is favorable to the prosecution, which is thereupon commenced, it will go far, in the absence of other facts, to show probable cause and to negative malice; in an action for a malicious prosecution.

**2. Same—Evidence—Statements to Counsel.**

The details of the statement made by client to counsel, upon which the advice is predicated, are indispensable in order to enable the jury to determine whether the necessary conditions are fulfilled.

**3. Same—Consulting with Magistrate.**

It matters not that the magistrate was an attorney, the advice being given not as an attorney, but as a magistrate. It is in such case insufficient to show probable cause or excuse the want of it

**4. Same—Insufficiency of Defensive Evidence.**

Record examined, and held, that there was ample evidence to establish the absence of probable cause on part of defendants for instituting the criminal action against the plaintiff.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by J. P. Goodman against Joseph Mayer and Oscar Mayer for malicious prosecution. Judgment for the plaintiff and defendants bring error. Affirmed.

Hayson & Lukenbill and Chastain. Harris & Young, for plaintiffs in error.

Ross & Thurman, Loyal J. Miller, and J. T. Mitchell, for defendant in error.

Opinion by PINKHAM, C. This action was commenced in the district court of Oklahoma county, by the defendant in error, J. P. Goodman, who, as plaintiff, in the cause below filed a petition in the district court of Oklahoma county against the plaintiffs in error, Joseph Mayer and Oscar Mayer, and one Kee R. McKee, seeking to recover damages for malicious prosecution in the sum of $10,000. The defendant in error alleging that plaintiffs in error had procured his arrest by falsely charging him in a justice of the peace court with the larceny of 50 bushels of oats, without probable cause, and that the cause was subsequently dismissed; that the action was not well founded and was without probable cause; and that the defendant in error had suffered damages in the sum of $10,000 by reason thereof.

The plaintiff in error Joseph Mayer, in the answer filed by the plaintiff in error, denied that he had filed the complaint, or had any knowledge of the filing of the same, and denied that the prosecution was instituted by or with his knowledge or consent.

The plaintiff in error Oscar Mayer, also designated as J. O. Mayer, alleges in the answer filed that he, as J. O. Mayer, filed the complaint against the defendant in error after making a full investigation of the facts, and only after laying all the facts fully before one F. S. Goodrich, justice of the peace, who was also a licensed attorney of years' experience; that the said F. S. Goodrich in turn laid the facts before the assistant county attorney, who recommended that a warrant be issued. And the said Oscar Mayer alleges that he then believed and still believes that probable cause existed for the arrest and prosecution of the defendant in error upon the charges.

Thereafter the cause came on for trial, and the defendant in error introduced his evidence and rested.

Thereupon the plaintiffs in error and Kee R. McKee interposed their separate demurrers to the evidence of the plaintiff, J. P. Goodman. The demurrer of the said Kee R. McKee was sustained, but the separate demurrers of these plaintiffs in error, Joseph Mayer and Oscar Mayer, were overruled and exceptions taken and saved.

The plaintiffs in error then introduced their testimony and rested.

The defendant in error introduced his testimony in rebuttal and rested.

The defendant in error, over objections and exceptions thereupon, was permitted at the close of the testimony to amend his petition and pray for $5,000 punitive damages. Thereupon the court instructed the jury and submitted the issues.

Thereafter the jury returned a verdict into court against the plaintiffs in error, Joseph Mayer and Oscar Mayer, for actual damages in the sum of $800, and punitive damages against Joseph Mayer for $100 and punitive damages against Oscar Mayer for $100.

Thereafter the plaintiffs in error filed their motion for a new trial, which motion

was overruled by the court and exceptions saved, and judgment rendered against the plaintiffs in error.

From the judgment so rendered by the court in favor of the defendant in error, the plaintiffs in error appeal to this court and seek thereby to reverse the judgment so rendered.

The plaintiffs in error set out a number of assignments of error in their motion for new trial and in their petition in error, but discuss in their brief only two propositions: First, that the judgment of the court is contrary to the law and the evidence; second that the advice of a practicing attorney constitutes a complete defense to an action for malicious prosecution.

Under the first proposition it is contended that the demurrer of the defendant Joseph Mayer should have been sustained; and it is further contended as to the defendant Oscar Mayer, that if a prima facie case was made out in favor of the plaintiff, the evidence of the defendants when considered completely exonerated the defendants from any liability in this cause. The following are the material facts disclosed in the record:

The plaintiff in the trial court, J. P. Goodman, occupied a farm as a lessee near the farm occupied by the defendants in the trial court, Joseph and Oscar Mayer, father and son. The son, who was 25 years of age lived with his father. The land occupied by the plaintiff was owned by one Dyer. In the year 1917 the plaintiff raised a small crop of oats on the Dyer place, and also raised a crop of oats in partnership with his brother on a farm occupied by his brother. In the fall of 1917 these oats were threshed and placed in a granary on the plaintiff's premises. Some time later in the fall of 1917 the plaintiff made preparations to go into the oil fields. He had a sale of some of his personal property and on the 30th day of December, 1917, removed the balance of his property, including the oats mentioned, consisting of some 60 or 70 bushels, to the premises of his brother-in-law, one Royston, and placed his oats in a granary on the brother-in-law's place.

It appears that the defendants had 1,000 or 1,200 bushels of oats stored in a granary on land leased by the defendant Oscar Mayer, which land was situated a mile or a mile and a half from the land occupied by plaintiff, and that on the 9th day of January, 1918, the defendant Joseph Mayer discovered that some of their oats, about 40 or 50 bushels, had been taken from their granary, and Oscar Mayer subsequent to the discovery of the loss made an investigation, in company with a deputy sheriff. According to the testimony of the defendant Oscar Mayer, and the officer, they discovered the presence of oats scattered along the road and traced them to Mr. Royston's place.

Oscar Mayer then went to his father's home for dinner and told his father what he had found out during his investigation. He then went to the town of Britton, before a justice of the peace, to swear out a search warrant, directed to the premises of Robert Royston, about one o'clock of the day the oats were reported as stolen. Later Oscar Mayer with others went to Royston's premises with an automobile and truck to haul the oats to Britton which were found there, which it appears afterward he sold. When the search warrant was issued he went back to his father's house, and then returned to the town of Britton with his father, the defendant Joseph Mayer. When the officers returned from serving the search warrant at Mr. Royston's place, the plaintiff returned to Britton, and went to the office of the justice of the peace who had issued the search warrant, for the purpose of explaining his ownership of the oats, which had been stored at Mr. Royston's place. About the same time the defendant Oscar Mayer went to the office of the justice of the peace in Britton to swear out a warrant for the arrest of Mr. Royston, charging him with the theft of the oats. Both he and his father testified that Oscar Mayer went alone. The record discloses that when the plaintiff came out of the office of the justice of the peace he found Oscar Mayer and his father, Joseph Mayer, together, in front of the office of the justice of the peace.

The plaintiff testified that he addressed Joseph Mayer and said: "Mr. Mayer, I hear you have lost some oats": that Mr. Mayer, replied: "Yes, I have." Plaintiff then said: "Well you have got the wrong party, Royston never took them, them oats that is there is mine:" and that Joseph Mayer then said. "We have turned it over to Judge Goodrich," the justice of the peace.

Shortly after this Oscar Mayer filed a complaint against the plaintiff, charging him with larceny of the oats in question. The complaint made by Oscar Mayer charging the plaintiff with the theft of 50 bushels of oats, was sworn to by him on the 12th day of January, 1918, and on the same day the plaintiff instituted an action of replevin to recover from the defendants the oats in question in a justice of the peace court in Oklahoma county.

The plaintiff took a change of venue in the criminal case filed against him before the justice of the peace in the town of Britton, to

another justice of the peace in Oklahoma City, Okla.

The writ of replevin was served on the defendants the morning of January 12, 1918, and on that morning one of the defendants employed an attorney at Britton to defend that action and also to assist the assistant county attorney in the criminal case against the plaintiff. The defendants' attorney testified in this case that he was employed "to keep those oats."

It appears that the replevin action instituted by the plaintiff against the defendants for the recovery of the oats which they had already taken and sold, and the criminal action against the plaintiff instituted by the defendants were disposed of on the same day. Both the defendants were present at the time of the disposition of these cases. The replevin action was determined in favor of the plaintiff, and the criminal action was dismissed on the motion of the assistant county attorney. The replevin action was appealed by the defendants to the district court of Oklahoma county.

Thereupon, a second complaint was made out and sworn to by Oscar Mayer in the court of Robert W. Maupin, justice of the peace, charging the plaintiff with the theft of the said oats. This second prosecution was also dismissed on the motion of the assistant county attorney, on February 23, 1918.

It appears that the replevin action appealed by defendants to the district court was by that court dismissed for want of jurisdiction, leaving the ownership of the oats undecided.

With respect to the connection of the defendant Joseph Mayer with the prosecution of the plaintiff, the court instructed the jury as follows:

"And in this connection you are instructed that if you find for the plaintiff as against the defendant J. O. Mayer (Oscar Mayer) and if you find and believe from the evidence that Joseph Mayer aided and abetted in the prosecution aforesaid, then you are instructed that your verdict will be as against both defendants."

In view of these facts, we think the court did not err in overruling the demurrer on the part of the defendant Joseph Mayer, and that the question of whether or not he participated with his son in instituting the prosecution against the plaintiff for the theft of the oats in question was fairly submitted to the jury under the instructions quoted; no exception was taken by either party to this instruction.

It is contended by counsel for defendants under their first proposition that there was no evidence showing malice. The fact that the plaintiff had raised a crop of oats in 1917; that he had sold at public sale a part of his personal property and had stored his oats in the granary of his brother-in-law in December, 1917; in other words, the fact that the plaintiff had raised, threshed, and stored the oats in question in Mr. Royston's granary was so generally known as shown by the evidence, considered with the further important fact that the plaintiff bore a good reputation as a law-abiding citizen in the community in which he and the defendants resided, supports the claim of plaintiff that the prosecutions against him were instituted without probable or reasonable cause. These facts were or should have been known to the defendants and the undisputed fact that the plaintiff informed the defendants that the oats in question were his several days before his arrest, taken in connection with the statement of Oscar Mayer in his examination in the case, that in charging the plaintiff with taking his oats he "wanted to find out whether the plaintiff had taken them or not", such facts and circumstances indicate a want of probable cause on the part of defendants in charging the plaintiff with the crime of larceny.

"Likewise the jury are to consider whether or not the defendant had an honest belief in the plaintiff's guilt. A state of mind is a fact like any other." 18 R.C.L.. 61, 220.

Malice may be inferred from want of probable cause. C., R. I. Railway Co. v. Holliday, 30 Okla. 680, 120 Pac. 927.

"But it is not necessary in all cases to make proof of malice; the existence may be inferred from the want of probable or reasonable cause." Newell on Malicious Prosecution, page 246.

Aside from this, the filing of the second complaint, thereby instituting a second prosecution on February 12, 1918, after the first prosecution had been dismissed, was evidence sufficient to go to the jury on the question of malice.

We have not overlooked the explanation of the defendants as to the second prosecution instituted against the plaintiff by one of the defendants, to the effect that the assistant county attorney advised the dismissal of the first complaint for the reason that it only charged petit larceny, and that another complaint should be filed charging grand larceny. The assistant county attorney referred to was not a witness in the case.

It is sufficient to say that the plaintiff had instituted an action to recover from the defendants the oats in question, which by the great weight of evidence were raised and stored by him in the granary of his bro-

ther-in-law, and which the defendants had taken by virtue of a search .warrant and disposed of; that the plaintiff was first charged with the theft of that oats on the same day that he commenced the replevin action, which was later decided in his favor in the justice court, where there was pending at the same time the first criminal case against him; that the replevin action and the criminal case were both disposed of on the same day, the criminal charge being dismissed by the assistant county attorney. The replevin action was appealed by the defendants to the district court. A second prosecution was commenced against the plaintiff upon the complaint of one of the defendants, again charging him with the theft of the oats, which was subsequently dismissed by the assistant county attorney. So far as the record discloses, the ownership of the oats in question remains undecided.

It is further contended that there is no proof that the prosecution had been finally terminated in the plaintiff's favor.

It appears in this regard that one of the attorneys for the defendants stated during the trial of this cause that both cases were ended.

The criminal action and the replevin case were ended at the same time. The record does not disclose and it is not contended that there was any further prosecution of the plaintiff. We conclude, therefore, the prosecution of the plaintiff had finally terminated.

In the second proposition it is contended by counsel for defendants in their brief that in an action for malicious prosecution it is a complete defense where the undisputed testimony shows that, prior to the filing of a complaint, the complainant consulted with a licensed attorney and laid the facts before him.

The argument is that the undisputed testimony shows that prior to the beginning of this prosecution Oscar Mayer consulted with H. F. Goodrich, who at the time was a licensed attorney, and was known as such throughout the country, and our attention is directed to the case of Sims v. Jay, 53 Okla. 183, 155 Pac. 615 in which case it is said.

"In an action for malicious prosecution growing out of a criminal prosecution of the plaintiff by defendant, where the latter before instituting the criminal proceedings advised with an attorney, and placed before him all the facts bearing on the case, of which complainant had knowledge, or could have ascertained by reasonable inquiry and diligence, and had acted upon the advice re-

ceived honestly, and in good faith, the absence of malice is established and the want of probable cause is negatived and recovery cannot be had."

The rule announced above is well established in this state, but, as we view the facts disclosed in the record, the case cited and others of the same import are not applicable to this case.

The proof offered by the defendants fails to bring them within the rule announced in the case cited.

In the instant case the record fails to disclose that the justice of the peace advised the defendants, either of them, to institute proceedings for the prosecution of the plaintiff. Futhermore, the record fails to show that the defendants, or either of them, consulted with the justice of the peace as an attorney, rather than on account of his position as a magistrate. A justice of the peace is not the proper officer to give advice concerning criminal prosecutions about to be commenced before him. The county attorney is the proper officer designated by law for such purpose. Dobel v. Norton, 22 Kan. 101.

It would be a dangerous practice, not justified by any public exigency, to permit a party to say in his justification for commencing a criminal prosecution that might injure or destroy the reputation of the party accused that he acted upon the advice of a person not a lawyer, however honestly the advice may have been given and received.

"That a justice of the peace giving the advice was also a lawyer has been declared not to change the rule, for the reason that the policy of the law forbids the justice to act as an attorney or to advise in regard to a prosecution to be instituted before him." 18 R.C.L. 50.

In the case of Marks v. Hastings, 101 Ala. 165, 13 South. 297, it is said:

The charge under consideration, when referred to the evidence, raises the question whether the advice of a justice of the peace, when he is also a practicing attorney, after a full and fair statement of the facts to him advises that a prosecution can be maintained, should be allowed the same place in the defense to an action of this character as is given to the advice of learned counsel. The general rule is that the advice of a magistrate cannot justify a prosecution. 14 Amer. & Ency, Law, 57. Does the fact that the magistrate is also a practicing attorney have a different effect? We think not. The policy of the law forbids a justice of the peace to act as an attorney or to advise in regard to a prosecution intended to be instituted before him***However learned in the law, it would be an impolitic and unwarranted extension of the rule to allow the advice or

opinion of a justice of the peace in regard to the sufficiency of the grounds for the institution of a prosecution before him."

In the case of Morin v. Moreau, 112 Me. 471, it is said:

"It matters not that the magistrate was a practicing attorney, the advice being given not as an attorney, but as a magistrate. It is in such case insufficient to show probable cause or excuse the want of it."

After an examination of the whole record, we are clearly of the opinion that there was ample evidence to establish as a matter of law the absence of probable or reasonable cause on the part of defendants, and of each of them, for the institution of a criminal action against the plaintiff, and the fact that defendants first obtained the advice of a justice of the peace who was also an attorney, the advice being given not as an attorney, but as a magistrate, it is in such case insufficient to show probable cause or excuse the want of it.

We think, for the reasons stated, that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.