**EMPIRE GAS & FUEL CO. et al. v. WAINSCOTT.**

No. 11569—Opinion Filed June 5, 1923.

**1. Malicious Prosecution—Right of Action —Termination of Prosecution by Dismissal.**

The dismissal of a criminal prosecution, entered with the consent of the court on the failure of the prosecutor to produce evidence in support of the charge, is such a termination of the prosecution as will enable the accused to sue for malicious prosecution.

**2. Same—Proof of Notice.**

In an action for malicious prosecution, malice may be inferred from want of probable cause, and it is not necessary that the testimony should show express malice.

**3. Same—Want of Probable Cause—Nondisclosure of Facts to County Attorney.**

Record examined, and held, that the undisputed evidence shows a want of probable cause for the prosecution, and failure on the part of the defendants to fully and fairly communicate to the county attorney all of the material facts, relating to the guilt of the plaintiff, within their knowledge or which they could have obtained by reasonable diligence and inquiry.

**4. Same—Question for Court—Instructions.**

In an action for malicious prosecution, where the evidence is undisputed, the question of what amounts to probable cause or the want of probable cause is one of law for the court, and where the undisputed evidence shows a want of probable cause for the prose-

cution, and a failure on the part of defendants to fully and fairly communicate to the county attorney all of the material facts relating to the guilt of the plaintiff, within their knowledge, or which they could have obtained by reasonable diligence and inquiry, the Supreme Court will not reverse the case for a new trial, merely because the trial court failed to instruct the jury as to specific facts and circumstances in the case, which would show probable cause, or a want of probable cause.

**5. Appeal and Error—Harmless Error—Instructions.**

Where it appears from the evidence that a verdict is so clearly right that had it been different the court should have set it aside, such verdict will not be disturbed merely for the reason that there is error found in the instruction.

**6. Same.**

Although an instruction may contain an improper statement of law, if it is clearly apparent from the whole record that no prejudice has in fact resulted therefrom, the error will not be considered.

**7. Malicious Prosecution—Malice and Want of Probable Cause.**

In an action for malicious prosecution, where the prosecutor before instituting the criminal proceeding obtained the advice of the county attorney, but did not fully and fairly communicate to him all of the material facts bearing on the case of which he had knowledge or could have obtained same by diligence and inquiry, acting upon the advice thus received does not establish the absence or negative a want of probable cause, and an action for malicious prosecution may be maintained.

**8. Same—Excessive Recovery—Remittitur.**

Evidence examined, and held, that the verdict for $4,500 is excessive upon the facts proven, and that the judgment should be reversed, and a new trial granted, unless a remittitur is filed for all in excess of $1,072.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Osage County; Preston A. Shinn, Judge.

Action by Reuben Wainscott against the Empire Gas & Fuel Company and G. C. Blake to recover damages for alleged malicious prosecution. Judgment for plaintiff, and defendants bring error. Modified and affirmed.

Hayes McCoy, C. C. Julien, and Warren T. Spies, for plaintiffs in error.

B. C. Trice and Templeton & Tillman (Thos. H. Owen and Suits & Hall, of counsel), for defendant in error.

Opinion by FOSTER, C. This action was commenced in the district court of Osage county, Okla., by defendant in error, plaintiff below, against the plaintiffs in error, defendants below, on the 14th day of February, 1919, to recover the sum of $6,072, as damages for an alleged malicious prosecution. For convenience the parties will be designated as they appeared in the court below.

Plaintiff in his petition charges that on January 29, 1919, the defendant Empire Gas & Fuel Company, through G. C. Blake as its agent, and Blake acting for himself, caused plaintiff's arrest by the authorities of Osage county, on a charge of larceny of three Ford automobile casings, valued at $25 each, and one Ford engine valued at $200, the property of the defendant corporation; that plaintiff was arrested on said charge, and was imprisoned for a day, and was compelled to give bond for his release; that thereafter the prosecution was dismissed by the examining magistrate, upon motion of the county attorney; that said prosecution was instituted by the defendants maliciously, and without probable cause; that said arrest and prosecution was instituted upon the affidavit of the said G. C. Blake, acting for himself, and as the agent of said defendant corporation; that plaintiff had been damaged in the sum of $22 actual damages; $50 for loss of time from his business; $1,000 because of his mental and physical suffering caused by said arrest and prosecution; and $5,000 for injury to his business and reputation, a total of $6,072.

Each defendant filed a separate answer, admitting the institution of the prosecution, denying that it was instituted maliciously or without probable cause, and alleging that it was instituted in good faith, and upon the advice of the county attorney, after disclosing to him all the facts within their possession.

The answer of the Empire Gas & Fuel Company admitted that Blake was in its employ at the time of the arrest, but denied that Blake was acting as its agent in making the affidavit and filing the complaint upon which plaintiff was arrested and imprisoned.

The reply was in the nature of a general denial of new matter in the answer. There is no substantial conflict in the material testimony of the plaintiff and defendants.

The evidence discloses that the defendant Empire Gas & Fuel Company was the owner of a Ford automobile, and that some weeks prior to January 29, 1919, it had been left standing on the side of the road about 600 yards from the residence of the plaintiff, Rueben E. Wainscott, and a short distance from the homes of C. J. Bucy and C. H. Minter, neighbors of the plaintiff; that the Empire Gas & Fuel Company maintained a garage in the city of Bartlesville, Okla., and that one C. H. Dunham was the superintendent in charge of said garage for the defendant Empire Gas & Fuel Company, and G. C. Blake was the floor manager at the garage.

There is no evidence to show how the automobile came to be left on the side of the road by the Empire people, except the evidence does show that it was, at the time, being "trailed" or pulled in.

The plaintiff testified that he was arrested on January 29, 1919, by W. A. Crow, deputy sheriff; that he was taken by the officer to Pawhuska, to the county attorney's office, and afterwards to the office of G. W. Hargis, justice of the peace, where he made bond in the sum of $500, was released and told to appear for trial on February 1st; that he went back to Pawhuska on January 31, and was told by the county attorney that he had found upon investigation there was not sufficient evidence, and they both went over to the office of the justice of the peace, who, on motion of the county attorney, dismissed the case, and the plaintiff was discharged.

Plaintiff further testified that on January 30, 1919, he went to the Empire Gas & Fuel Company's garage at Bartlesville, and there had a conversation with G. C. Blake, floor manager of the garage, in the presence of one Harry Fisher. He testified that in this conversation Blake stated that Mr. Bucy had reported that the plaintiff had stolen the engine out of the automobile, and also had taken some tires off of it; that he first paid no attention to it, but that later Mr. Bucy and a Mr. Minter came back and informed him and the superintendent that Wainscott was leaving the country, and made it so strong that the superintendent sent Blake over to swear out a warrant against the witness, Wainscott, for stealing the engine and casings; that in this conversation Blake stated that he was acting under the orders of the Empire Gas & Fuel Company, his employer, in swearing out the warrant.

Wainscott further testified in answer to the following question:

"Q. What did he tell you about that car? A. He told me,—says there is the car that they claim the engine was stole out of, there is the car that was out there that

they claim the engine was stole out of, says it wasn't stole, and I asked him about the casings, and he says I don't know whether it ever had any casings on it or not, I asked him if the casings were branded or anything, so as I could help him to find them, and he said he didn't know, that some of their casings were branded with 'Empire' stamped on them and some of them weren't."

Corbett Cornett, county attorney of Osage county, testified that when Blake came to his office to swear out a warrant against Wainscott, he stated that an engine and casings had been stolen out of the Empire car, and that a man by the name of Mr. Bucy had informed him that Mr. Wainscott had this property in his possession; that they first talked about a search warrant and then a warrant, and that he finally advised that a warrant issue for Mr. Wainscott; that Wainscott was arrested and put under straw bond, and two or three days later, after an investigation, he dismissed the case for want of evidence.

He further testified that Mr. Blake stated that the stolen property belonged to the Empire Gas & Fuel Company, and that he was there representing the company.

Harry Fisher testified for the plaintiff that he went with the plaintiff to the garage of the Empire Gas & Fuel Company at Bartlesville; that he heard a conversation between plaintiff and G. C. Blake; that Mr. Blake pointed out the car involved in controversy; that the boys had pulled it in there; that it had an engine in it then; that he did not know anything about this car; that there was a car sitting back in the garage and you can go and look at it; said he did not know whether it had any engine in it or not, or whether it had any tires on it or not, but that it had an engine in it then.

G. W. Hargis, justice of the peace, was introduced and identified the complaint, the warrant issued thereon, the appearance bond, and a certified transcript of his docket as justice of the peace, showing that the county attorney appeared on January 31, 1919, and dismissed the charge against Wainscott, and discharged him from custody.

W. A. Crow testified, on behalf of the plaintiff, that he arrested the plaintiff on January 29, 1919, and that plaintiff was in his custody four or five hours.

A demurrer on behalf of the Empire Gas & Fuel Company to the evidence of the plaintiff was interposed at the conclusion of plaintiff's testimony, overruled, and exceptions allowed. None of the material facts

introduced in evidence by the plaintiff were denied by the defendants.

G. C. Blake, one of the defendants, in his testimony did not attempt to deny the statement imputed to him by Corbett Cornett, witness for plaintiff, when he came to swear out the warrant, that the engine had been stolen from the Empire car, nor did he attempt to deny the statement imputed to him by the plaintiff and by the witness Harry Fisher that the engine was not stolen out of the car, and that it had an engine in it then, and that he did not know whether the car ever had an engine in it or not.

He further testified that whatever report was made by Mr. Bucy and Mr. Minter concerning the condition of the car was made to Mr. Dunham, superintendent of the Empire Gas & Fuel Company garage at Bartlesville, and that he, as floor manager, received all of his information concerning the guilt of the plaintiff, prior to the filing of the affidavit, from Mr. Dunham, and that Mr. Dunham told him that he had been informed, at different times, by neighbors of Wainscott, that he had been taking things off the car, and that he had "probably" taken the engine too.

Defendants introduced C. J. Bucy, who testified that he reported to the Empire people that he had noticed three tires, radiator, lights, and some parts around the engine, missing, and that Mr. Minter had told him (Bucy) that Wainscott was seen to leave the car and enter his house just prior to the time these articles were found missing; but Bucy's testimony nowhere discloses that he reported the engine as missing.

C. H. Minter was introduced by the defendants and testified that he did not report to the Empire people that the engine had been stolen. His statement is found on pages 91 and 94 of the case-made, and is as follows:

"Q. Did you ever see him in the evening after dark? A. Well on one occasion I seen somebody,—well there was two of them. Q. Will you just describe what you saw on that occasion. A. Well it was on a Sunday night, just a little after dark, I started over to a neighbors with a lantern, I and my brother, and we heard a hammering down there and he said that is somebody getting the rest of that car. Before that there was a couple of tires taken off, and I think a light or bulb or whatever they call them,— I didn't know anything about a car,—my brother seemed to. And when we started down the hill with the light they could see the light and we seen two boys leave there, and we was going north and he lived north and east of this car, and we got up the road

a bit and his dog barked, and we seen two boys go in the house.

"Q. Whose dog barked? A. Mr. Wainscott's. Q. Whose house? A. His house. Q. Did you report those facts to the Empire Gas & Fuel Company or any of its agents? A. Well, they asked me what I knew about it, and that's what I told them. * * * Q. Did you tell them that the engine was gone? A. No, sir."

After both plaintiff and defendants had rested their case, the defendants requested the giving of certain instructions, numbered one to five, which were refused and exceptions saved. The court thereupon charged the jury, to the giving of certain portions of which charge the defendants excepted. Trial resulted in a verdict for plaintiff and against the defendants in the sum of $4,500. A motion for a new trial being overruled, judgment was entered on the verdict, from which judgment the defendants bring error.

In the first place, defendants contend that under the undisputed evidence the plaintiff has failed to establish the primary elements of his cause of action, and that a verdict should have been directed for the defendants on the evidence. That under the undisputed evidence it was not shown: First, that there had been a proper termination of action; second, want of probable cause; third, that the prosecution was inspired by malice; fourth, that a just and fair disclosure by the defendants to the county attorney had not been made; fifth, that the defendant G. C. Blake was acting within the scope of his authority as agent of the defendant Empire Gas & Fuel Company.

They further contended that there was error in the court's instructions: First, on probable cause; second, on malice; third, on the effect of the advice of the county attorney; fourth, on Blake's authority as agent for the defendant Empire Gas & Fuel Company, and in refusing certain requested instructions on all of these propositions.

Defendants finally complain that the court erred in refusing to set aside the verdict of the jury as excessive, and in refusing a new trial.

Counsel for defendants contend that under the undisputed evidence no proper termination of the prosecution against the plaintiff had been shown, and cite the case of First State Bank v. Denton, 82 Okla. 137, 198 Pac. 874, as authority. An examination of this case, however, discloses that the party prosecuted had entered into a compromise or agreement of some sort with the prosecuting witness whereby it was agreed that the

prosecution would be dismissed upon payment by the defendant of a certain sum of money, and that the cause was continued from time to time pending the performance of this agreement by the party prosecuted, and the court held:

"* * * Where the dismissal of a criminal prosecution has been obtained by procurement of the party prosecuted, or by compromise or agreement of the parties, then an action for malicious prosecution cannot be maintained."

In the case at bar, there was no compromise or settlement; the accused stood upon his plea that he was not guilty. The justice of the peace, upon motion of the county attorney, dismissed the case and discharged the defendant. We are therefore of the opinion that the Denton Case has no application to the facts of the case at bar.

In 26 Cyc. 60, it is said:

"There are authorities holding that an action of malicious prosecution will not lie on the entry of a nolle prosequi. The greater weight of authority, however, is that it is a sufficient termination of the prosecution to authorize defendant to sue for malicious prosecution, when entered with the consent of the court, for reasons other than an irregularity or informality in the indictment. * * *"

In the case of Graves v. Scott, 104 Va. 372, 51 S. E. 821, 2 L. R. A. (N. S.) 927, the court says:

"The dismissal of a criminal prosecution with costs against prosecutor on his failure to produce evidence in support of the charge is such a termination of the charge as will enable the accused to sue for malicious prosecution."

This rule has been upheld by the Supreme Court of Kansas in the following cases: Marbourg et al. v. Smith, 11 Kan. 554; Schippel v. Norton, 38 Kan. 567, 16 Pac. 804. We are therefore of the opinion that a proper and legal termination of the prosecution against the plaintiff has been shown, and that the court committed no error in refusing to direct a verdict on this ground.

It is next insisted that probable cause was established by the undisputed evidence, and that the court should have directed a verdict for the defendants thereon. It is insisted that the evidence shows that the defendant Blake made a just, fair, and honest disclosure of all of the material facts, relating to the guilt of the plaintiff, within his knowledge, to the county attorney, and that the county attorney honestly and in good faith advised the prosecution, and that such con-

duct on the part of the defendants establishes the absence of malice and negatives want of probable cause.

We cannot agree with counsel for defendants in this conclusion. On the other hand, it is our opinion that the evidence on the part of the plaintiff, and the inferences that should be logically drawn therefrom, warranted the jury in finding, as they did find, a want of probable cause, and a failure on the part of the defendants to honestly communicate to the county attorney all of the facts, bearing on the case, within their knowledge, or which they could have obtained by reasonable diligence and inquiry. In view of the testimony of the plaintiff and Fisher, to the effect that Blake stated to them that the engine was not stolen out of the Empire car —that the car was in the garage and had an engine in it then—and the testimony of the county attorney to the effect that Blake stated to him (Cornett) that the engine had been stolen, we think the jury was justified in inferring that Blake either misrepresented a material fact to the county attorney, or failed to use reasonable diligence in ascertaining material facts before going to the county attorney. Not only did the defendants fail to deny these statements imputed to Blake, but they introduced the testimony of Bucy and Minter, the parties from whom they claimed to have obtained all of their information, to the effect that neither of these parties reported to the Empire Company that the engine had been stolen at all. Blake, himself, testified that the superintendent of the Empire garage, Mr. Dunham, merely suggested that the engine had "probably" been stolen. According to Minter's testimony, his report to the Empire people did not positively identify Wainscott as the party who had stolen parts of the car, and the only information as shown by defendants' testimony on which the defendants acted in instituting the prosecution, was the rather equivocal statement of Minter, given upon hearsay to Bucy, from Bucy to Dunham, and from Dunham to Blake.

In the light of all the evidence, we think the court would have been justified, as a matter of law, in telling the jury that the undisputed evidence showed a want of probable cause for the prosecution, and a failure to make such disclosure to the county attorney as would establish the absence of malice and negative a want of probable cause, and that the court committed no error in refusing to direct a verdict for the defendants on the ground that probable cause had been shown.

It is next insisted that the undisputed evidence shows a want of malice. We have already found that under the evidence there was a want of probable cause for the prosecution, and from such want of probable cause, malice is inferred, and it is not necessary that the testimony should show express malice.

In the case of C., R. I. & P. Ry. Co. v. Holliday, 30 Okla. 680, 120 Pac. 927, the court laid down the rule, as follows:

"Malice may be inferred from want of probable cause. It is an inference which the jury may or may not draw from the want of probable cause."

The next complaint is that the court erred in not directing a verdict for the defendant Empire Gas & Fuel Company, because there was no evidence that Blake was acting within the scope of his authority as agent for said company. It is insisted that the act of Blake in swearing out the warrant did not come within the scope of his employment; that it was not calculated to protect any property of the Empire Gas & Fuel Company, and could have no effect other than to bring a guilty party to justice.

Counsel for defendants cite the case of C., R. I. & P. Ry. Co. v. Holliday, 30 Okla. 680, 120 Pac. 927, and insist that the doctrine announced in that case applies only to cases where the action for malicious prosecution is founded upon the wrongful issuance of a search warrant; and that in cases where the object of the prosecution is to punish a party guilty of a crime, it is not within the scope of an agent's authority, and his principal is not bound by his acts. In the Holliday Case, the court, in the syllabus, says:

"A private corporation, like an individual, is liable for the acts of its agent in instituting a malicious prosecution, if the same were done while acting within the scope of his authority."

While the Holliday Case was based upon the wrongful issuance of a search warrant, we cannot find from an examination of that case and from a review of the authorities cited by the court, any foundation for the distinction which counsel for defendants seek to draw. The Holliday Case was cited, and its doctrine again announced by this court, in C., R. I. & P. Ry. Co. v. Radford, 36 Okla. 657, 129 Pac. 834, where the court, in the third paragraph of the syllabus, says:

"A railway company is liable for the acts done by a train auditor acting within the scope of his general authority, in furtherance of the company's business, and for the accomplishment of the object for which the auditor was employed; and where the act done arises out of a controversy over the payment of a fare and consists in procuring

an officer to make an arrest of one aboard the train on which the auditor is employed, and such arrest is wrongful, the company is liable in damages for the injuries sustained."

In the body of the opinion, the court, among other things, says:

"A corporation may even be held liable for a libel, or a malicious prosecution by its agent within the scope of his employment; and the malice necessary to support either action, if proved in the agent, may be imputed to the corporation. * * *

"As to the defendant company's liability, we believe the rule, supported by the great weight of authority and the best reasoning, to be that the master is liable for the acts done by a servant within the scope of his general authority, in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed."

That the agent Blake was acting for the Empire Gas & Fuel Company, under orders from it, in a matter growing out of, and directly connected with, the property of the defendant company, is not disputed by the evidence of any witness, and we are therefore of the opinion that the trial court was right in refusing to direct a verdict for the defendants, because the evidence failed to show that Blake was not acting within the scope of his authority as agent.

It is next insisted that the trial court committed reversible error in failing to instruct the jury as to the specific facts or circumstances in the case which would show probable cause or lack thereof, and in refusing to instruct as requested by defendants.

Counsel for defendants cite the case of Dunnington v. Loeser, 48 Okla. 636, 149 Pac. 1161, in support of their assignment of error, and point out that probable cause is a question of law for the court, and not a question of fact for the jury.

We have already found that the court under the undisputed evidence was warranted in finding, as a matter of law, a want of probable cause and, hence, for this court to reverse the case at bar and remand it for a new trial, because of the failure of the trial court to instruct the jury as to the specific facts or circumstances which would show a want of probable cause, would, in effect, amount to remanding the cause, and telling the trial court to direct the jury to find exactly as they did find, and would serve no purpose whatever. Unless this court can find that the instructions of the court caused a miscarriage of justice, a reversal will not be ordered. C., R. I. & P. Ry. Co. v. Newburn,

39 Okla. 704, 136 Pac. 174; Chickasha St. Ry. Co. v. Marshall, 43 Okla. 192, 141 Pac. 1172; section 6005, Rev. Laws 1910.

Furthermore, having found as a matter of law from the undisputed evidence in the case at bar that there was a want of probable cause for the prosecution, the instructions on probable cause, and on malice, given to the jury by the court were more favorable to the defendants than to the plaintiff, and of such error the defendants cannot be heard to complain.

In the case of Ward v. Richards, 28 Okla. 629, 115 Pac. 791, we find the following language:

"When the instructions complained of could not have operated to the prejudice of such party, though under some given facts it would have been prejudicial, a reversal does not follow."

In Kuhl v. Supreme Lodge Select Knights & Ladies, 18 Okla. 383, 89 Pac. 1126, the rule is stated, as follows:

"Although an instruction may contain an improper statement of law, if it is clearly apparent from the whole record that no prejudice has in fact resulted therefrom, the error will not be considered."

See, also, Shawnee National Bank v. Wootten and Potts, 24 Okla. 425, 103 Pac. 714, where the Supreme Court, speaking through Justice Dunn, said:

"Where it appears from the evidence that a verdict is so clearly right that had it been different the courts should have set it aside, such verdict will not be disturbed merely for the reason that there is error found in the instructions."

It is urged that the instructions of the court on the effect of the advice of the county attorney were erroneous.

Where the facts are undisputed, it is the duty of the court, as a matter of law, to instruct the jury whether or not the prosecutor made the county attorney such a disclosure of the material facts within his knowledge, relating to the guilt of the accused, or which he could have obtained by reasonable diligence and inquiry, as would establish the absence of malice, and negative a want of probable cause.

We have already found that there was a failure on the part of the prosecutor to fully and fairly reveal to the county attorney all of the material facts within his knowledge, or which he could have obtained by the use of reasonable diligence and inquiry, and, hence, the giving of the instruction complained of was more favorable to the defendants than to the plaintiff, and of such error

that the defendants cannot be heard to complain.

Defendants next say that the court erred in instructing the jury, over their objections, as follows:

"And if you further find that the defendant Blake was acting as agent for the defendant Empire Gas & Fuel Company at the time he caused the arrest of the plaintiff, then and in that event you will further find for the plaintiff and against the defendant Empire Gas & Fuel Company; and if you fail to so find you should find for the defendants."

The undisputed evidence shows that the arrest was caused by Blake in a matter growing out of, and directly connected with, the property of the defendant company, and under orders from it. In this state of the evidence, it is difficult to conceive how the jury could have been misled by this instruction. No evidence was introduced to show that Blake acted other than as the agent of the Empire Gas & Fuel Company, and under orders from it, and upon a matter involving the property interests of the defendant company, and the jury must have necessarily found that, in acting as agent, he was acting under the express directions of the company. The instruction was applicable to the undisputed evidence in the case, and the jury could not have been misled because it was not made to apply to some theory of fact not in evidence.

Having found that the court's instructions to the jury were right, it follows that no reversible error was committed by the court in refusing certain requested instructions on the same propositions.

Finally, the defendants assign as error the refusal of the trial court to set aside the verdict of the jury as excessive. We believe this contention is well taken. In considering whether the verdict is excessive, it is necessary to take into consideration that the plaintiff in his petition claims only a damage of $1,000 because of his mental and physical suffering. He claims $22 actual damage; $50 loss of time from his business, and $5,000 for injury to his business and reputation.

The plaintiff testified that he was just recovering from the "flu" at the time of his arrest, and that on account of exposure to the cold, resulting from the arrest, he had a relapse, and was confined indoors for a period of three or four months. Under the evidence the jury was justified in allowing the full amount claimed on account of mental and physical suffering, $22 actual damage and $50 for loss of time from his business.

It follows that the jury must have allowed the plaintiff all in excess of $1,072, or the sum of $3,428, for injury to his business and reputation.

We cannot find from the evidence any proof of injury to either the plaintiff's business or reputation as would justify any recovery at all for this item, and the verdict of the jury, so far as any allowance is made for injury to plaintiff's business and reputation, is excessive.

This court in the case of Slick Oil Co. v. Coffey, 72 Oklahoma, 177 Pac. 915, and the case of City of Sapulpa v. Deason, 81 Okla. 51, 196 Pac. 544, stated the rule as follows:

"Where it clearly appears that the jury has committed some palpable error or acted upon some improper bias influence, or prejudice, or has clearly mistaken the rules of law by which damages are to be regulated, the verdict can be set aside. * * * And where a verdict is excessive for any of the reasons cited, the Supreme Court may direct a reversal of the cause or give the plaintiff the option to remit the amount held to be excessive and allow the judgment as modified to stand."

This rule was recently approved by the Supreme Court in an opinion by Mr. Justice McNeill, in the case of Chicago, R. I. & P. Ry. Co. v. Fontron Loan & Trust Co., 89 Okla. 87, 214 Pac. 172.

It is therefore ordered that, if the plaintiff will file a remittitur for all in excess of the sum of $1,072, to wit, the sum of $3,428, within 30 days of the receipt of the mandate herein by the trial court, the judgment as thus modified will be affirmed; otherwise, the judgment will be reversed and remanded, and a new trial granted.

By the Court: It is so ordered.