## COVINGTON STATE BANK v. JAYNE.

No. 14692—Opinion Filed Sept. 30, 1924.

### 1. Appeal and Error—Harmless Error—Instructions.

Where it appears from the evidence that a verdict is so clearly right that had it been different the court should have set it aside, such verdict will not be disturbed merely for the reason that there is error found in the instruction.

### 2. Same.

Although an instruction may contain an improper statement of law, if it is clearly apparent from the whole record that no prejudice has in fact resulted therefrom, the error will not be considered.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Garfield County; J. C. Robberts, Judge.

Action by Clint Jayne against the Covington State Bank, a corporation, to recover a money judgment. Judgment for plaintiff, and defendant appealed. Affirmed.

Simons, McKnight & Simons, for plaintiff in error.

W. W. Sutton, for defendant in error.

Opinion by FOSTER, C. On the 8th day of November, 1922, the defendant in error, Clint Jayne, as plaintiff, commenced an action in the district court of Garfield county against the Covington State Bank, plaintiff in error, defendant below, to recover the sum of $640, alleged to be due him as rent on certain real estate occupied by the plaintiff in error, under a certain lease which the defendant in error had executed to the plaintiff in error on the 21st day of July, 1920.

Parties will be hereinafter referred to as they appeared in the trial court.

A copy of the lease contract was attached to and made a part of the plaintiff's petition, from which it appeared that the plaintiff leased to the defendant corporation, for the term beginning July 21, 1920, and ending July 21, 1925, the entire ground floor of the west side of the building located on lot 13, block 31, of the original town site of Covington, Okla., (better described as the room now occupied by the Covington State Bank, also the room to the rear of said bank, now occupied by Gracey's Globe, a clothing store) for a rental of $100 per month, payable at the end of each month.

It was alleged that although the defendant had been in possession of the property under the terms of the lease since the execution thereof, conducting a banking business therein, it had failed to pay a balance of $640 maturing as rent from the 21st day of July, 1920, to the first day of November, 1922, for which amount plaintiff demanded judgment.

The answer of the defendant was a general denial of the allegations contained in the petition, and by way of cross-petition demanded judgment against the plaintiff for the sum of $520, on account of failure by the plaintiff to deliver the possession of a portion of the leased premises to the defendant, by which it claimed it had over paid the plaintiff the sum of $480, and the further sum of $40 which it claimed had been expended in repairs made necessary by reason of failure of the plaintiff to keep the building and premises in good repair.

Reply was filed by the plaintiff and the cause proceeded to trial before the court and a jury, which resulted in a judgment in favor of the plaintiff for the amount sued for. Motion for a new trial was filed and overruled, exceptions allowed, and the defendant brings the cause regularly on appeal to this court upon petition in error and case-made.

Only one proposition is relied upon and discussed by the defendant in its brief, and that is that the trial court committed error in giving the following instruction to the jury:

"The defendant having admitted the execution of the lease involved in this case, I charge you under the terms of said lease contract it is bound thereon, unless it establishes by a preponderance of the evidence, as hereinbefore stated, that the plaintiff failed, neglected and refused to deliver said premises to defendant; and in this connection I further charge you that if you find from the preponderance of the evidence that after the leasing of said premises the defendant consented for the Gracey's Globe Company, or any other person or persons

to occupy said room for any length of time or indefinitely, and you further find that the Gracey's Globe or any other person or persons did occupy said room by and with the consent of the defendant, the fact that the defendant did not take possession of said premises as provided in said lease would not relieve it from payment of the rent as provided thereon; but on the other hand, the defendant would be liable for the full amount of said lease as provided in said contract, notwithstanding the premises in controversy were occupied by some other person."

The argument is that the instruction complained of erroneously imposed upon the defendant bank the burden of proving by a preponderance of the evidence that the plaintiff had failed, neglected, and refused to give the possession of the leased premises to the defendant, by reason of having admitted the execution of the lease in controversy.

Authorities are cited in support of the proposition that a covenant for quiet enjoyment is implied in every lease contract, and that before the plaintiff can recover upon the covenant to pay rent it is incumbent upon him to show that he had placed the defendant in possession.

We have no fault to find with the defendant over the correctness of the rule of law insisted upon, and it is perhaps true that the instruction criticized, standing alone, might have imposed an undue burden upon the defendant bank if the bank had seriously controverted any of the evidence introduced and relied upon by the plaintiff to establish the delivery of possession of the premises to the defendant. However, it may be seriously doubted whether the instruction complained of when considered in connection with the instruction as a whole and in the light of the peculiar facts and circumstances of the case can be said to be fundamentally wrong, but if wrong it is clear to our minds, after a most careful examination of the entire evidence, that the action of the trial court in submitting defendant's case to the jury at all was more than it was entitled to, and such being the case the error is one of which the defendant ought not to complain.

The evidence on the part of the plaintiff dicloses that the defendant bank had, for a number of years, occupied under a verbal lease the south part of the west side of the building, located on lot 13, block 31, of the original town site of Covington; that to the rear of this space was a small room not separated by any partition from the store room on the east side of the building, locat-

ed on said lot 13, which the defendant desired to secure a lease upon in order that it might have at its disposal this additional space for future use, if in its judgment business conditions should warrant.

That prior to July 21, 1921, this space had been occupied by a clothing store, known as "Gracey's Globe" and operated by J. H. Gracey, under a lease whereby the plaintiff received a rental of $75 per month. A written lease was executed on the 21st day of July, 1920, by the plaintiff to the defendant including both the space theretofore ocupied by the bank and the open space referred to in the rear of said bank, then occupied by Gracey's Globe, but not until after the plaintiff had made an arrangement with Gracey, reducing his rent from $75 to $50 per month, and obtaining his consent to vacate at any time upon demand of the bank.

It is admitted that the placing of the partition between Gracey's store on the east and the open space referred to, obtained by the bank under its lease, and the making of an opening from the rear of the bank into the open space, constituted no part of plaintiff's duty in connection with placing the defendant in possession of the premises, and that such alterations and repairs were to be made exclusively at the expense of the defendant bank.

It further appears from the evidence introduced by the plaintiff that both the plaintiff and J. H. Gracey informed the defendant, at or about the time of the execution of said lease, that he could take possession at any time without interference by either of them, but the bank omitted to do so and paid the monthly installments of rent reserved in the lease for about 12 months.

It is true that there was some evidence introduced of continued occupancy by Gracey after July 21, 1920, but this evidence was not based or shown to have been based upon any claim of right thereto by Gracey under any lease contract or agreement with the plaintiff, and we are constrained to the view that such use was not an intentional appropriation by Gracey of this space, and could have been obviated altogether if the plaintiff had placed a partition between the store on the east side of the building, and the open space as he had agreed to do in the contract.

The evidence shows that soon after this the space was entirely abandoned and was not used by any person as a place of business. The evidence further shows that at

sundry times after the lease was executed and prior to the time it refused to pay rent on the space in dispute, the bank regarded the disputed premises as open to their possession and that its officials frequently discussed the propriety of occupying the same at some future time.

It is true that there was some testimony to the effect that at one time the bank attempted to store in the space referred to a stove of some kind, and was prevented by some clerk in the store of J. H. Gracey, but it was not shown that Gracey himself was present at the time or that the clerk acted under his authority.

This evidence on the part of the plaintiff clearly establishes, under the rules of law applicable to the case, a delivery of possession of the premises in controversy to the defendant. It is not necessary, as we understand the rule, that actual physical possession must be taken by the tenant before a delivery of possession has been shown. It is sufficient that no obstacle in the form of superior right of possession has been interposed to prevent the lessee from obtaining actual possession. The rule is stated in 24 Cyc. page 1050, as follows:

"According to the rule adopted in the majority of the states the lessor is not bound to put the lessee into actual possession, but is bound only to put him into legal possession so that no obstacle in the form of a superior right of possession will be interposed to prevent the lessee from obtaining actual possession."

So far as our examination of the evidence discloses there was no material conflict therein, upon the proposition that at all times after the 21st day of July, 1920, the defendant had the legal and constructive possession of the premises in controversy.

If the defendant did not have the actual physical possession of the premises it was through no fault of the plaintiff, since there was no impediment nor opposition to its taking possession thereof. The plaintiff had put an end to the right of his former tenant to hold possession thereof, and had suffered a substantial detriment, in order to be in a position to place the defendant in undisputed possession.

If there was any evidence introduced by the defendant to controvert the delivery of possession by the plaintiff, we have failed to discover it after a most careful examination of his evidence. There was no showing or attempt to show that any claim of possession was asserted by anyone based upon any right as a tenant of the defendant, nor was it seriously claimed that Gracey himself asserted any hostile right thereto, or that plaintiff's claim that Gracey had relinquished his use of the premises was without actual foundation. Nor did the defendant show or attempt to show that by the performance of its contract to put in a partition and cut a door from the rear of the bank to the disputed space, it could not have overcome all embarrassment due to the encroachment by adjoining tenants across from the open space.

It is true that the defendant denied any statement to Mr. Jayne that it would be all right for Mr. Gracey to stay in the disputed space as long as he wanted to, but there is no testimony that Mr. Gracey wanted to occupy this space after July 21, 1920, but the evidence of Gracey is that after this time he released the same and did not pay rent thereon any longer. It is also true that the defendant denied that it accepted Mr. Gracey as its tenant after July 21, 1920, but plaintiff's proof was that Mr. Gracey did not claim to be anybody's tenant after that time so far as the disputed space is concerned.

The statement of the defendant that the bank never got possession of the premises in controversy is an erroneous conclusion of law and is a matter for the court to determine under the practically undisputed evidence before it.

Upon a careful examination of the entire record we are clearly of the opinion that the instruction complained of was harmless. The verdict of the jury is so clearly right that had it been different the trial court should have set it aside, and a reversal for the reasons stated could, therefore, serve no useful or beneficial purpose whatever.

Empire Gas & Fuel Company v. Reuben Wainscott, 91 Okla. 66, 216 Pac. 141; Holmes v. Ellis, 99 Okla. 27, 225 Pac. 538.

In the Wainscott Case, supra, it is said in the syllabus:

"Where it appears from the evidence that a verdict is so clearly right that had it been different the court should have set it aside, such verdict will not be disturbed merely for the reason that there is error found in the instruction."

We are therefore of the opinion that the judgment of the trial court is correct and should be and is hereby affirmed.

On appeal to the court from a judgment of the district court of Garfield county, supersedeas bond was filed and executed by the defendant, Covington State Bank, as principal, and W. E. Carey and Wallace Melvin,

as sureties, to stay execution of said judgment and the plaintiff has asked this court, in his brief, to render judgment against the bondsmen of the defendant as well as against the defendant.

No response has been made to this request. Judgment of the trial court was rendered on the 12th day of March, 1923, for the sum of $640, together with interest thereon, at the rate of 6 per cent per annum from the first day of November, 1922, and for costs, and judgment will therefore be entered in this court against the defendant and his sureties on appeal bond for the sum of $640, with interest thereon at the rate of 6 per cent per annum, from the first day of November, 1922, and for costs, for which execution may issue.

By the Court: It is so ordered.