# GENERAL MOTORS ACCEPTANCE CORP. v. DAVIS.

No. 20291.   Opinion Filed July 28, 1931.

Petition for Rehearing Withdrawn
Aug. 25, 1931.

Pierce, McClelland & Kneeland, for plaintiff in error.

Billups & Billups, for defendant in error.

HEFNER, J.   This is an action by John W. Davis against General Motors Acceptance Corporation to recover damages for conversion of an automobile and for malicious prosecution because of the unlawful use of criminal process in obtaining possession thereof.

In his first cause of action plaintiff claims damages in the sum of $1,000 because of conversion of his automobile, and $500 punitive damages; and in his second cause of action claims $1,000 actual damages and $500 punitive damages.

The jury returned a verdict in his favor for $545 actual damages and $500 punitive damages on his first cause of action and $1,000 actual damages and $500 punitive damages on his second cause of action, and judgment was entered in accordance with the verdict.

Defendant contends that the evidence is insufficient to sustain the judgment and that the court erred in overruling its motion for a directed verdict.

The evidence offered on behalf of plain-

tiff discloses facts substantially as follows: On the 24th day of July, 1927, he purchased an automobile from the Underwood Motor Company of Pampa, Tex., and made a cash payment thereon in the sum of $800, and executed installment notes and a mortgage on the automobile to secure the payment of the balance of the purchase price. The notes and mortgage were thereafter transferred by the motor company to defendant. With the consent of the motor company, he removed the car to the state of Oklahoma and procured employment in an oil field at St. Louis, Okla. He defaulted on the payment of the installment notes due December, 1927, and January, 1928. In February, 1928, R. E. Limbocker made some inquiry of him relative to the location of the automobile, and a few days thereafter L. G. Thomas, defendant's agent, and Limbocker demanded that the notes be immediately paid or the automobile be surrendered to defendant. He at that time advised them where the automobile was, but refused to surrender it, and stated to them that if given a few days time he could get the money from his employer to take up the past due installments. On the following day he was arrested on the charge of concealing mortgaged property, on complaint sworn to by Limbocker. He was arrested by a deputy sheriff and taken before a justice of the peace in Seminole and placed in his charge overnight. While under arrest, Limbocker told him that a warrant was also sworn out against him in the state of Texas for removing mortgaged property and that a sheriff from Texas was then on his way to Oklahoma to arrest him on the warrant and that unless he surrendered the car before the sheriff arrived from Texas he would be taken to that state to answer the charge. Under this threat he agreed to deliver the automobile to Limbocker. Under the direction of Thomas he delivered the car at Seminole the next morning and it was there placed in a garage and the criminal case against him was dismissed. He thereafter communicated with his employer and obtained the money from him to pay all past due notes, but was unable to locate the automobile. He made inquiry of defendant's agent relative thereto, but obtained no satisfaction.

Plaintiff further testified that he was brought before the justice of the peace by the deputy sheriff about 5:30 or 6:00 o'clock at night. That Limbocker called Thomas at his hotel over the telephone and advised him of plaintiff's arrest and asked him what was to be done with plaintiff. That after the conversation Limbocker stated that he would have to stay in jail until the next morning, and started to take him to jail. That the justice of the peace then took charge of him and permitted him to remain at his house for the night. That the car was at that time at the home of his wife's sister. That he had agreed with Limbocker to deliver the car the next morning. That Thomas came to the office of the justice of the peace the next morning and inquired for Limbocker. That plaintiff and Thomas looked for Limbocker and discovered that he was not in a condition to go with plaintiff to deliver the car. That at the request of Thomas, a deputy sheriff by the name of Smythe went with him to get the car. That the car was brought to Seminole and placed in a garage and plaintiff was discharged.

Thomas testified that he was general field manager for defendant and that he had charge of the Oklahoma state branch office. He admitted that in company with Limbocker he called on plaintiff and demanded possession of the car. He denied, however, that he authorized the arrest, and testified that he protested against the issuance of the warrant. He, however, testified that after plaintiff's arrest Limbocker did call him at his hotel and advised him of the arrest and also admitted that he agreed to assist Limbocker in procuring a return of the car.

Defendant, in its original answer, admitted that it was the owner of the mortgage at the time the car was taken. That it employed Limbocker to get the car and the car was taken by Limbocker and returned to it. It, however, denied that it authorized the arrest of plaintiff. This answer was sworn to by defendant's assistant manager and was offered in evidence by plaintiff.

It later, however, amended its answer in which it alleged that it had no interest in the car at the time it was taken by Limbocker and that after it was taken it was delivered to the Underwood Motor Company. It, however, in its amended answer, admits that it was assisting the motor company in recovering the car and that Limbocker was acting under its direction in attempting to locate the car. It denied, however, that it authorized the arrest of plaintiff. The case was tried on the amended answer.

Limbocker's testimony was about as follows: He represented defendant in obtaining possession of the automobile and informed it that it might be necessary to resort to use of criminal process in order to obtain possession thereof and that it advised

him to proceed. He, however, on cross-examination, modified his evidence and stated that he was not positive that he used the words "criminal process," but that he did advise it that it might be necessary to resort to action to obtain possession and that defendant advised him to proceed.

On cross-examination he admitted that he did not tell defendant that he was going to swear to a criminal charge. By profession he was a collector and was working to get a reward offered by the Underwood Motor Company.

Defendant's evidence is to the effect that it did not authorize Limbocker to swear out the complaint, that it had at that time no interest in the automobile, that the motor company redeemed from it the past due notes and that it retransferred the paper to the motor company and that it was acting in a friendly capacity in aiding that company to locate the automobile and collecting the notes.

Defendant contends that the evidence is insufficient to establish the fact that it was instrumental in taking possession of plaintiff's car and causing his arrest. If Limbocker was acting as agent for defendant in doing what he did, defendant would undoubtedly be liable.

In the case of C., R. I. & P. Ry. Co. v. Holliday, 30 Okla. 680, 120 Pac. 927, this court said:

"A private corporation, like an individual, is liable for the acts of its agent in instituting a malicious prosecution, if the same were done while acting within the scope of his authority."

See, also, C., R. I. & P. Ry. Co. v. Radford, 36 Okla. 675, 129 Pac. 834; Empire Gas & Fuel Co. v. Wainscott, 91 Okla. 66, 216 Pac. 141. We think the evidence sufficient to take the case to the jury on the question as to whether Limbocker was acting as agent for defendant in procuring plaintiff's arrest and taking possession of the automobile.

Defendant further contends that plaintiff cannot recover because he agreed to return the automobile in consideration of the dismissal of the criminal prosecution. The evidence is conflicting on this question. Plaintiff testified that he returned the automobile because of threats made that he would be arrested and taken to the state of Texas to answer a charge of removing mortgaged property unless he immediately surrendered possession thereof. Defendant offered evidence that he did agree to return the automobile in consideration of the dismissal of

the criminal charge. The court charged the jury that the plaintiff could not recover in the event the criminal case was dismissed by his procurement and consent. The jury found this issue against defendant. There is sufficient evidence to sustain this finding and we are bound thereby.

Defendant further contends that plaintiff's first cause of action pleaded an action in replevin and at the close of the evidence requested the court to direct a verdict in its favor on that cause of action for the reason the evidence disclosed that it did not have possession of the car at the time the action was brought.

Plaintiff then asked and was granted permission to amend the prayer of his petition and defendant's motion was overruled. Plaintiff in his original petition prayed for the return of the car or for the sum of $1,000, the value thereof, in case a return thereof could not be had.

The prayer of the petition was amended, praying damages in the sum of $1,000 for conversion of the car. When defendant filed its answer showing that it did not have possession of the car at the time the action was brought, plaintiff, in his reply, pleaded a conversion of the automobile. The case was tried on the theory that the pleading stated a cause of action in conversion.

Moreover, the original petition sufficiently alleged a cause of action in conversion. There was no error in permitting the prayer to be amended.

Defendant excepted to instruction No. 14 wherein the court instructed the jury that in the event it found for plaintiff on his second cause of action he should be allowed such damages for injury to his business and reputation, if he was so injured, in such sum as would fairly compensate him for the injury. The instruction is excepted to on the ground that there is no evidence upon which to base it. Plaintiff testified that he had a good credit prior to his arrest, that his credit was ruined thereby. That it was generally known in the community that he had been arrested. That after his arrest he was unable to get credit. We think this evidence sufficient upon which to base the instruction as to damages to reputation. The element of damage for injury to plaintiff's business should have been omitted. There was no evidence on this question. We do not, however, think that the jury was misled by the insertion of the word "business" therein. The verdict does not appear to be excessive. The error in this respect is harmless.

It is next contended by defendant that the court erred in refusing its requested instruction to the effect that if Limbocker swore to the complaint after consultation with the county attorney, and under his advice, the verdict should be for defendant. Defendant did not plead such advice as a defense. It, however, contends that evidence was offered to sustain such defense. The only evidence offered on this question was the evidence of Limbocker. He testified that before swearing to the complaint he telephoned the county attorney and advised him that plaintiff was concealing mortgaged property and that he desired a warrant for his arrest. That the county attorney told him that he would authorize the issuance of a warrant. We think the evidence insufficient upon which to submit this defense to the jury. In order that advice of the county attorney may constitute a defense there must be a full and fair disclosure in good faith of all the facts. Wegner v. Minchew, 38 Okla. 23, 131 Pac. 696; Empire Gas & Fuel Co. v. Wainscott, supra. There was no disclosure of the facts to the county attorney by Limbocker, no advice from him was sought. He was simply informed by Limbocker that plaintiff was concealing mortgaged property and requested that a warrant issue. The evidence was insufficient to take this issue to the jury and there was no error in refusing the requested instruction.

Defendant next contends that the evidence fails to establish a conversion. Under plaintiff's theory of the case and his evidence, this issue was properly submitted to the jury. In the case of Wilson Motor Co. v. Dunn, 129 Okla. 211, 264 Pac. 194, this court said:

"Although a chattel mortgage provides that the mortgagee, under certain conditions, may take possession of the mortgaged property, yet neither the mortgagee, its assignee, nor their agents have the right to take possession of the property by force, threats, violence, or stealth, and without the consent of the mortgagor. The law will not permit a mortgagee to commit or threaten a breach of the peace and then to justify the conduct by a trial of the rights of property.

"Under section 7428, C. O. S. 1921, a person holding a lien on personal property extinguishes the lien by wrongfully converting said property to his own use."

Under the evidence offered by plaintiff, defendant obtained possession of the automobile by the unlawful use of criminal process and threats of further prosecution. In so doing it extinguished the mortgage lien and became guilty of conversion.

It is also urged that there is no competent evidence to support the verdict of the jury as to the value of the automobile. Plaintiff testified without objection that its value at the time of the conversion was $1,000. This evidence is sufficient to support the verdict.

It is finally contended that the damages awarded are excessive. That exemplary damages should not have been allowed on both causes of action. With this contention we are inclined to agree. While the wrongful act of defendant gave rise to different causes of action, the right to recover exemplary damages grows out of a single wrongful act, the unlawful use of criminal process to obtain possession of the automobile. In our opinion the allowance of exemplary damages on both causes of action constituted double punishment to defendant for a single wrongful act.

The judgment is therefore modified to the extent of disallowing exemplary damages on the first cause of action, and as so modified, the judgment is affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. KORNEGAY, J., dissents.

Note.—See under (1) 18 R. C. L. 64; R. C. L. Perm. Supp. p. 4412.